Carolyn **WESTPHAL, individually and as next friend of Eric Michael Westphal, a minor, and as Independent Executrix of the Estate of Michael Westphal, Deceased, Appellant,**

v.

**Gustavo DIAZ, M.D., Appellee.**

**No. 13–94–237–CV.**

Court of Appeals of Texas, Corpus Christi.

Jan. 18, 1996.

Opinion on Overruling of Rehearing March 21, 1996.

---

J. Norman Thomas, Harris & Thomas, Corpus Christi, for appellant.

Tom Hermansen, Hunt, Hermansen, McKibben & Barger, Corpus Christi, Carlos Villarreal, Hunt, Hermansen, McKibben & Barger, Corpus Christi, for appellee.

Before SEERDEN, C.J., and YAÑEZ and CHAVEZ, JJ.

## OPINION

YAÑEZ, Justice.

Carolyn Westphal appeals from summary judgment on survival and wrongful death actions based on Dr. Gustavo Diaz's malpractice. The trial court granted Diaz's motion for summary judgment, which asserted the defense of limitations. Westphal appeals by one point of error. We reverse and remand in part and affirm in part.

Diaz was Michael Westphal's doctor only up until August of 1984; Michael Westphal had Hodgkin's Disease, which Diaz treated with Cytoxan. In August of 1984, Westphal began to excrete blood in his urine while he was on vacation. Because he was out of town, Westphal saw a different doctor. This doctor offered the opinion that Westphal had been taking Cytoxan for too long and that extended use of the drug had caused Westphal's bladder to bleed. Because of the bleeding from his bladder and urinary tract, Westphal was intermittently hospitalized from 1984 until his death in 1992. Over the course of treatment for these problems, Westphal was led to believe that his condition was a curable effect of the Cytoxan.[1] Westphal consequently declined to bring suit. Nevertheless, he did not continue to see Diaz for treatment.

Westphal's new doctor recommended reconstructive bladder surgery in 1991. During medical examinations conducted in preparation for that surgery, Westphal's bladder cancer was first detected. When he discovered the terminal cancer, Westphal decided

---

1. The dissent contends the record does not show that the Westphals were led to believe the urinary tract bleeding was curable. This is an inference we drew in favor of the Westphals, the nonmovants in this case, based on the following factors:

 * Carolyn Westphal testified that her husband sought prompt and continual medical treatment for the urinary tract bleeding.
 * During the course of treatment for the urinary tract bleeding, either Dr. Weiner or Dr. Heard (the context of the testimony does not specify which doctor) told the Westphals about the healing process.
 * After the doctor explained the healing process, Michael Westphal thought he was going to recover and Carolyn Westphal understood that her husband's problems were healing.

 Either the Westphals believed the urinary tract bleeding was curable because of what their doctors told them, or they formed this belief despite what their doctors told them. Considering Carolyn Westphal's testimony in light of the standard of review for summary judgments, we infer that the Westphals were led to believe the urinary tract bleeding was curable.

to sue Diaz. No action was filed, however, until a year after Michael Westphal's death.

Based on these facts, we must determine whether Diaz's motion for summary judgment established as a matter of law that the statute of limitations barred Carolyn Westphal's suit. *See Chambers v. Conaway*, 883 S.W.2d 156, 158 (Tex.1993).

■ At common law, a claim for personal injuries expired upon the claimant's death, and the decedent's survivors had no claim against a party who may have negligently caused the decedent's death. *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 845 (Tex.1990). However, the Texas legislature has abrogated both of these common-law rules. TEX.CIV. PRAC. & REM.CODE ANN. §§ 71.002 (allowing claim for wrongful death), 71.021 (allowing survival of decedent's causes of action) (Vernon 1986). A decedent's spouse, children, and parents may now bring a statutory wrongful death claim for their loss of future pecuniary benefits, loss of inheritance, loss of companionship, and mental anguish. *Id.* § 71.004; *Moore v. Lillebo*, 722 S.W.2d 683, 687–88 (Tex.1986). A statutory survival action allows the decedent's heirs, legal representatives, and estate to sue for injuries that the decedent personally suffered. TEX.CIV. PRAC. & REM.CODE ANN. § 71.021.

Although Carolyn Westphal's suit is comprised of survival and wrongful death claims, her cause of action is also a health care liability claim because it falls within the following definition:

"Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

TEX.REV.CIV.STAT.ANN. art. 4590i, § 1.03(a)(4) (Vernon Supp.1995). Notwithstanding any other law, no health care liability claim can be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or hospitalization for which the claim is made is completed; provided that, minors under the age of 12 years shall have until their 14th birthday in which to file, or have filed on their behalf, the claim.

*Id.* § 10.01.

■ The Westphals' claims are based on Diaz's negligence in the course of treatment. Consequently, the two-year limitations period on Carolyn Westphal's claims began to run on the last day that Diaz treated Michael Westphal. If suit was filed after expiration of that two-year period but before Michael Westphal's death, Michael and Carolyn Westphal's claims might have been preserved by the discovery rule. *See Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 355 (Tex. 1990) (open courts provision of Texas Constitution precludes any application of art. 4590i, § 10.01 that sets an impossible precondition to common-law remedies). If Michael Westphal had filed suit prior to his death, his health care liability claim would have involved a common-law remedy and might have been susceptible to the discovery rule.

In this case, however, Michael Westphal died before any suit was filed. Consequently, the wrongful death claim that Carolyn Westphal asserts in her individual capacity and the survival action she asserts as representative of Michael Westphal's estate are statutory in nature. *Kramer v. Lewisville Memorial Hosp.*, 858 S.W.2d 397, 403 (Tex. 1993). Accordingly, neither the open courts provision nor the tolling provision within section 10.01 prevents expiration of the two-year limitations period. TEX.REV.CIV.STAT.ANN. art. 4590i, § 10.01.

■ But Carolyn Westphal also brings suit as next friend of Eric Westphal, who is the only child from the Westphals' marriage. Like Carolyn Westphal's claims, Eric Westphal's claims are wrongful death and survival actions premised on Diaz's medical treatment of Michael Westphal. As with his mother's claims, therefore, Eric Westphal's claims are governed by the statute of limitations in article 4590i. *See id.* § 1.03(a)(4) (defining health care liability claims subject to art. 4590i); *Bala v. Maxwell*, 909 S.W.2d 889, 892

(Tex.1995); *Sanchez v. Memorial Medical Ctr. Hosp.*, 769 S.W.2d 656, 659–60 (Tex. App.—Corpus Christi 1989, no writ). Because Eric is under 12 years of age, however, the tolling provision within section 10.01 applies to extend the time during which Eric can bring suit. Tex.Rev.Civ.Stat.Ann. art. 4590i, § 10.01; *cf. Weiner v. Wasson*, 900 S.W.2d 316, 318–19 (Tex.1995) (discussing inadequacy of tolling provision to protect rights of minor asserting common-law claim). We hold that Diaz's summary judgment motion and proof are inadequate to establish that the statute of limitations barred Eric's claims.

The interaction between the wrongful death statute and the Medical Liability and Insurance Improvement Act has created several points of conflict among the courts of appeal. *Compare, e.g., Sanchez*, 769 S.W.2d at 659–60 (limitations period under Medical Liability and Insurance Improvement Act governs claims that are both health care liability claims and wrongful death claims) *with Wilson v. Rudd*, 814 S.W.2d 818, 822–23 (Tex.App.—Houston [14th Dist.] 1991), *overruled sub nom. Bala*, 909 S.W.2d at 892 (intermediary court of appeals reached contrary holding regarding applicability of limitations from wrongful death statute). To clarify our holding in this case, we first address our application of the discovery rule.

■ The discovery rule does not apply to the limitations period during which a party must file a wrongful death claim. *Moreno*, 787 S.W.2d at 350–51. This does not preclude Eric's causes of action, however, because he filed suit before limitations expired under either the Medical Liability and Insurance Improvement Act or the wrongful death statute. *Cf. Bangert v. Baylor College of Medicine*, 881 S.W.2d 564, 566–67 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (considering similar claim of a minor).

■ Eric's claims are derivative in nature and, therefore, depend on whether his father could have brought a personal-injury suit immediately before his death. *Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343, 344–47 (Tex.1992). Whether Eric's father could have brought a personal-injury suit immediately before his death depends on Michael Westphal's ability to avail himself of the discovery rule. Application of the discovery rule to Michael Westphal's hypothetical suit affects whether Eric Westphal may maintain his derivative claims. Accordingly, we must determine whether Diaz's summary judgment evidence establishes as a matter of law that the discovery rule would not have been applicable in a suit brought by Michael Westphal.

Throughout his motion for summary judgment and appellate brief, Diaz characterizes Michael Westphal's bladder cancer as merely the final progression of the urinary tract problem. Conversely, the Westphals characterize the urinary tract bleeding as a problem separate from Michael Westphal's subsequent bladder cancer. The Westphals describe the urinary tract bleeding as a minor, curable result of the treatment for Hodgkin's disease.

If the urinary tract bleeding and the cancer are part of one single injury, as Diaz contends, the Westphals cannot claim that they did not know of the injury at the time it occurred. If this relationship between the two health problems had been established as a matter of law, Michael Westphal would not have been able to apply the open courts provision or the discovery rule.

We reach a different result, however, if the urinary tract bleeding was merely a minor, curable side-effect of treatment with Cytoxan, and the bladder cancer was a separate and distinct injury. Diaz has failed to negate the applicability of the discovery rule if the Westphals have properly characterized the relationship between the urinary tract bleeding and the cancer.

■ Diaz's summary judgment proof includes no expert medical testimony resolving which party has accurately characterized the relationship between the urinary tract bleeding and the cancer. When a summary judgment proceeding involves a dispute as to the relationship between two medical problems, the movant must resolve that issue as part of its burden of proof. *Rountree v. Hunsucker*, 833 S.W.2d 103, 106 (Tex.1992).

■ In the absence of conclusive summary judgment evidence disposing of a material fact issue, we indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). In this case, we must infer that Michael Westphal promptly sought expert medical treatment and was led to believe the urinary tract bleeding was a minor, curable problem unrelated to the bladder cancer. Thus, the Westphals have raised a fact issue as to whether they had a reasonable opportunity to discover the injury that would have formed the basis of Michael Westphal's hypothetical suit. As a result, Diaz has failed to show as a matter of law that Michael Westphal would have been unable to invoke the open courts provision and apply discovery rule in a suit against Diaz. Accordingly, we hold that Diaz has not demonstrated that he is entitled to summary judgment on Eric Westphal's causes of action.

The dissent would hold that Diaz is entitled to judgment on all claims because the summary judgment evidence proves as a matter of law that Michael Westphal's suit would have been barred by limitations. The dissent contends that the Westphals were required to sue Diaz as soon as they had any knowledge of any problem related to Diaz's treatment. We reject that position, however, because it conflicts with this court's decision in *Dallas Market Center Hotel Co. v. Beran & Shelmire*, 865 S.W.2d 145 (Tex.App.—Corpus Christi 1993, writ denied).

In *Dallas Market Center*, we reversed a summary judgment based on limitations in a suit alleging architectural and structural design defects. *Id.* at 146. Dallas Market Center pleaded the discovery rule in response to the defendants' motion for summary judgment. As part of their summary judgment evidence regarding the applicability of the discovery rule, the defendants produced certain letters that they had received from Dallas Market Center. *Id.* This correspondence established that Dallas Market Center had identified some possible masonry defects while there was time to bring suit within the limitations period. *Id.* at 147.

■ In reply, Dallas Market Center argued that the problems alluded to in the letters were insufficient to inform it of the structural masonry defects that were the basis of the suit. Dallas Market Center also contended that the relatively minor problems discussed in the letters were unrelated to the major structural defect that led to litigation. Reversing the summary judgment, we held that

we cannot discern from the letters whether this was sufficient, as a matter of law, to hold that appellants "discovered" the extensive nature of the masonry defects which form the basis of this suit. Any doubt must be resolved in favor of appellant.... We hold that appellees have not negated the discovery rule by proving as a matter of law that appellant discovered or should have discovered the injury before 1989.

*Id.* (citations omitted). Under *Dallas Market Center*, the summary judgment movant is required to show that the nonmovant's knowledge of some potential problem was sufficient to inform it of the injury in dispute. In the absence of summary judgment proof resolving that issue as a matter of law, the movant cannot show that the discovery rule is inapplicable to the case. Diaz has failed to discharge the burden that we discussed in *Dallas Market Center*.

Conversely, the dissent would hold that the relevant "injury" in this case is the act of prescribing Cytoxan. This analysis is not appropriate in the context of a summary judgment on a health care liability claim such as the Westphals' case. The medications used to combat cancer often cause severe side-effects. In the absence of summary judgment evidence, we cannot say that urinary tract bleeding as a result of treatment for a potentially fatal cancer automatically represents a legally compensable injury. In this case, the harmful side-effects did not necessarily outweigh the benefits of treatment until Michael Westphal was diagnosed with bladder cancer. As a result, it would be unjust to hold that Michael Westphal was required to bring suit as soon as he first experienced a minor, curable problem related to Diaz's treatment. *See, e.g., Baldridge v.*

*Howard,* 708 S.W.2d 62, 65 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) (plaintiff who knew of some harm to vocal cord could postpone suit for nine years until she learned injury was permanent because "if she believed [injury] was temporary result of surgery, there would be no reason for filing suit").

Moreover, the dissent's approach to this case is inconsistent with the Texas Supreme Court's seminal decisions in *Weaver v. Witt,* 561 S.W.2d 792 (Tex.1977) (per curiam), and *Gaddis v. Smith,* 417 S.W.2d 577 (Tex.1967).

In the *Weaver* case, Tom Weaver alleged that Dr. Witt's negligent performance of a hemorrhoidectomy caused Weaver's permanent loss of bowel control. *Weaver v. Witt,* 552 S.W.2d 565, 567 (Tex.Civ.App.—Houston [14th Dist.] ), *rev'd per curiam,* 561 S.W.2d 792 (Tex.1977). Weaver did not file suit until five years after the operation, however, after he first learned that the damage to his bowels was incurable. *Id.* Weaver asserted both fraudulent concealment and the discovery rule in response to Witt's motion for summary judgment based on limitations, but Weaver presented no summary judgment evidence. The trial court granted summary judgment in favor of Witt, and the intermediate appellate court affirmed that judgment.

"As to the fraudulent concealment plea," the Texas Supreme Court concluded, "the Court of Civil Appeals was correct." *Weaver,* 561 S.W.2d at 793. The supreme court nevertheless reversed the lower court judgments and remanded the cause for trial on the merits. Although the plaintiff bore the burden of proof on his plea of fraudulent concealment, the defendant bore the burden of conclusively negating the discovery rule as part of its limitations defense. *Id.* at 793-94. The supreme court further explained that the discovery rule operated so that

> a statute of limitations barring prosecution of an action for medical malpractice runs, not from the date of the practitioner's wrongful act or omission, but from the date the nature of the injury was or should have been discovered by the plaintiff.

*Id.* (footnote omitted).

This is the very rule that the legislature sought to eliminate from medical malpractice cases by passing the Medical Liability and Insurance Improvement Act. *Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985). Yet this legislative attempt to abolish the discovery rule is unconstitutional "to the extent it purports to cut off an injured person's right to sue before the person has a reasonable opportunity to discover the wrong and bring suit." *Nelson v. Krusen,* 678 S.W.2d 918, 923 (Tex.1984). When the nonmovant-plaintiff preserves its challenge to the constitutionality of the Medical Liability and Insurance Improvement Act, the movant-defendant must negate the discovery rule. *Hellman v. Mateo,* 772 S.W.2d 64, 66 (Tex.1989).

In our case, the Westphals pleaded the unconstitutionality of the Medical Liability and Insurance Improvement Act as applied to their claims and raised a fact issue material to that challenge. Accordingly, Diaz was obliged to conclusively negate the possible application of the discovery rule before we could consider the act of prescribing Cytoxan as the relevant "injury" in this case. The dissent would automatically apply the "legal injury rule" as if the Westphals failed to plead the discovery rule. *Cf. Aduddell v. Parkhill,* 821 S.W.2d 158, 159 (Tex.1991). In this case, however, the Westphals pleaded the discovery rule as well as the unconstitutionality of the Medical Liability and Insurance Improvement Act as applied to their claims. In light of these pleadings, the dissent's application of the legal injury rule conflicts with *Weaver v. Witt,* 561 S.W.2d at 793–94.

The result that the dissent would reach is also inconsistent with the Texas Supreme Court's decision in *Gaddis v. Smith,* 417 S.W.2d 577 (Tex.1967). In the *Gaddis* case, Dr. Smith neglected to remove a surgical sponge before closing the incision he made while operating on Dorothy Gaddis. Five years passed between the operation and Gaddis's discovery of the fact that Smith had failed to remove the sponge. *Id.* at 578. During this "long period," Gaddis experienced "increasing internal pain." *Id.* Gaddis knew of this increasing internal pain, but the supreme court applied the discovery rule to toll limitations until she discovered, or

should have discovered, what her injury actually was. *Id.* at 580.

The basis for Gaddis's suit was the injury represented by the surgical sponge. Yet Gaddis's knowledge of her increasing internal pain did not preclude an application of the discovery rule in the suit alleging Smith's failure to remove the sponge. This is because Smith did not show that Gaddis's pain was sufficient to inform her that Smith had negligently caused the injury that was the basis of her suit. *Id.* Under the dissent's view, Gaddis would have been automatically obliged to bring suit over the increasing internal pain she experienced during the period beginning immediately after the operation. This is not the result that the supreme court reached.

Considering the facts of the *Weaver* and *Gaddis* cases, we presume that Tom Weaver and Dorothy Gaddis may have had some early postoperative inkling that their surgeries had not been flawless. Weaver and Gaddis each experienced the initial negative effects from treatment during the two-year period immediately following surgery. Yet the Texas Supreme Court did not recite these circumstances as an automatic bar to Weaver's and Gaddis's later suits. Regardless of these cases, the dissent would bar Eric Westphal's claims based on Carolyn Westphal's admission that she and her husband felt that "Diaz had done [the decedent] wrong" as early as 1984. Under the rigorous standard of review for summary judgments, however, this sentiment does not conclusively resolve whether the patient had a reasonable opportunity to discover the relevant injury. This is particularly true in light of evidence suggesting that Michael Westphal diligently sought treatment of his urinary tract bleeding and was led to believe the problem was minor and curable.

Finally, we address the dissent's reliance on *Graffagnino v. Fibreboard Corp.*, 776 F.2d 1307 (5th Cir.1985) (per curiam), *Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129 (5th Cir.1985), and *Pecorino v. Raymark Industries, Inc.*, 763 S.W.2d 561 (Tex.App.— Beaumont 1988, writ denied). In *Graffagnino* and *Pecorino*, the plaintiff settled a personal-injury claim and then filed suit based on further damages as a result of the same tort that formed the basis of the earlier settlement. *Graffagnino*, 776 F.2d at 1308; *Pecorino*, 763 S.W.2d at 562; *cf. Gideon*, 761 F.2d at 1136–38 (at trial, Gideon introduced evidence of further damages that were not manifest at time of trial). Although *Graffagnino* and *Pecorino* were actually based on interpretations of the relevant releases, all three cases generally support the proposition that plaintiffs must bring all claims for consequential damages, present and future, when they bring a tort action. *Graffagnino*, 776 F.2d at 1308–09; *Gideon*, 761 F.2d at 1136–37; *Pecorino*, 763 S.W.2d at 562.

The principle from *Graffagnino, Gideon,* and *Pecorino* might dispose of the instant case if the Westphals had sued Diaz over the urinary tract bleeding, settled that claim, and then filed this suit. *But see Hagerty v. L & L Marine Servs., Inc.*, 788 F.2d 315, 320–21 (5th Cir.), *modified,* 797 F.2d 256 (1986) (persuasively criticizing this principle as unjust when applied in some contexts). Of course, that is not the situation now before us. To the contrary, the summary judgment evidence shows that the Westphals did not even consider suing Diaz over the urinary tract bleeding because they had been led to believe it was a curable problem. *See Weaver,* 552 S.W.2d at 567 (plaintiff did not file suit until he realized injury was incurable); *Baldridge,* 708 S.W.2d at 65 (plaintiff did not file suit until she learned injury was permanent because "there would be no reason for filing suit" over temporary disability).

The dissent's reliance on *Graffagnino, Gideon,* and *Pecorino* illustrates how the dissent has circumvented the main question at issue in this case. The filing and settlement of a suit has two distinct effects. First, as we discussed above, the filing of a suit may require that the plaintiff use that opportunity to bring all claims for present as well as future consequential damages. Second, the filing and settlement of a suit shows that the plaintiff has had a reasonable opportunity to discover an injury and ascertain the likelihood of all possible future harms. *See, e.g., Pecorino,* 763 S.W.2d at 568 ("the Pecorinos knew or should have known about the mesothelioma when the release [of liability for all

asbestos-related diseases] was carefully read and fully explained to them").

This discovery issue distinguishes Michael Westphal's urinary tract bleeding from the initial injuries at issue in the three cases the dissent relies upon. In each of the dissent's three cases, there was no question whether the plaintiffs had a reasonable opportunity to discover an injury and then bring suit. Because the plaintiffs in those cases discovered injuries and brought suit, they were charged with "constructive" discovery of all consequential injuries running from the tort. *Id.*

In our case, however, this critical discovery issue has not been conclusively resolved. Westphal did not bring suit over the urinary tract bleeding because he sought prompt treatment of that problem and was told that it was a minor, curable result of taking Cytoxan. Diaz's motion for summary judgment failed to show that Westphal had a reasonable opportunity to discover the injury at issue in this lawsuit. Under the facts of this case, *Graffagnino, Gideon,* and *Pecorino* offer no support for the theory that Eric Westphal should be handicapped by his father's constructive discovery of the bladder cancer.

We affirm the trial court's summary judgment on the causes of action that Carolyn Westphal asserts in her individual capacity and as representative of Michael Westphal's estate. We reverse the summary judgment as it applies to Eric Westphal's claims, and we remand those causes of action for further proceedings.

SEERDEN, C.J., dissents.

SEERDEN, Chief Justice, dissenting.

I disagree with the analysis and conclusion in the majority opinion. I would affirm the trial court's granting of summary judgment.

Because I do not view the majority's recitation of the facts as being complete and entirely accurate, a review of the facts and pertinent dates are in order. In 1977, Dr. Diaz prescribed the drug, Cytoxan, for the decedent, Michael Westphal, to treat his Hodgkin's Disease. Dr. Diaz continued to treat Mr. Westphal with Cytoxan until August 6, 1984. That was the last date Dr. Diaz treated the decedent and prescribed the Cytoxan.

In September 1984, while Mr. Westphal and his wife, Carolyn, were vacationing in North Carolina, Mr. Westphal noticed that he was excreting blood in his urine. A North Carolina emergency room physician told him to stop taking the Cytoxan and to see his doctor when he returned to Texas. Subsequently, while the Westphals were continuing their vacation in Colorado, Mr. Westphal experienced another episode of urinary tract bleeding and an inability to urinate. He was hospitalized for two weeks in Colorado and was again cautioned by physicians to not take the Cytoxan. Upon returning home to Texas, Mr. Westphal experienced more urinary tract and bladder problems and was again hospitalized. He sought treatment from another physician, Dr. Weiner, who also instructed Mr. Westphal to not take the Cytoxan. Mr. Westphal never returned to Dr. Diaz for treatment.

From the Fall of 1984 until early 1991, Mr. Westphal continued to experience urinary tract and bladder problems and continued to receive medical care. In early 1991, when he was admitted to the hospital for bladder reconstruction surgery, physicians determined that he had bladder cancer. He died in April 1992.

The majority opinion recites that, while Mr. Westphal was alive, he declined to file suit because he "was led to believe that his condition was a curable effect of the Cytoxan." I find nothing in the record to support this recitation. Rather, the appellant explains the reason her deceased husband did not file suit was because "he thought he was going to get well."

In May 1993, appellant, Carolyn Westphal, individually and on behalf of her minor son and her deceased husband's estate, brought wrongful death and survival actions against Dr. Diaz, alleging medical malpractice. Appellant alleged that Dr. Diaz prescribed the Cytoxan to her deceased husband for an extended period of time and that such prolonged duration and dosage of the Cytoxan proximately caused Mr. Westphal to develop fatal bladder cancer.

Appellant's wrongful death and survival actions are statutory in nature, TEX.CIV.PRAC. & REM.CODE ANN. §§ 71.001–71.051 (Vernon 1986 & Supp.1995), and are wholly derivative of the decedent Michael Westphal's right to have pursued a medical malpractice claim. *Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343, 345 (Tex.1992). The right of a statutory beneficiary to maintain wrongful death and survival actions is entirely derivative of the decedent's right to have sued for his injuries immediately prior to his death. *Id.* at 345, 347. Further, the right of a statutory beneficiary to maintain such actions is subject to the same defenses to which the decedent's action would have been subjected. *Id.* at 345, 347. In short, a wrongful death and survival action plaintiff stands in the same legal shoes as the decedent. *Id.* at 347. Thus, if a decedent's action would have been barred by limitations, then the wrongful death and survival actions based upon the same alleged wrong, are likewise barred. *Id.* at 345, 348–49.

Dr. Diaz moved for summary judgment on the affirmative defense of limitations. He asserted in his motion that appellant's wrongful death and survival actions, which are derivative of the decedent Michael Westphal's right to have sued for medical malpractice, are barred by the two-year statute of limitations set forth in TEX.REV.CIV.STAT. ANN. art. 4590i, § 10.01 (Vernon Supp.1995).

Appellant urged in her summary judgment response that the article 4590i, § 10.01 statute is unconstitutional because it violates the "open courts" provision of the Texas Constitution to the extent that it purports to have precluded the decedent's right to sue before he had a reasonable opportunity to discover his bladder cancer injury in April 1991. Further, appellant urged that she filed suit within the proper period of time after the decedent first discovered his bladder cancer.

The trial court granted summary judgment in Dr. Diaz's favor, and appellant now appeals. By a single point of error, appellant contends the trial court erred by finding that the statute of limitations on the decedent's medical malpractice claim had run as a matter of law.

When the defendant in a medical malpractice case moves for summary judgment on the affirmative defense of limitations, the defendant/movant bears the burden of showing that the suit is barred by limitations as a matter of law. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983). In reviewing a summary judgment, we must accept all evidence favorable to the nonmovant as true. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). Further, we must indulge all reasonable inferences in favor of the nonmovant and resolve all doubts in his/her favor. *Id.* at 549.

Before resolving whether Dr. Diaz sustained his summary judgment burden, it is necessary to ascertain the date on which the statute of limitations started to run on the decedent's medical malpractice claim had he pursued it before he died. The limitations period for medical malpractice claims, as set forth in the Medical Liability and Insurance Improvement Act, TEX.REV.CIV.STAT.ANN. art. 4590i, § 10.01 (Vernon Supp.1995), provides:

> Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed. . . .

Thus, the limitations period starts to run on one of three possible dates: (1) the occurrence of the breach or tort; (2) the date the health care treatment that is the subject of the claim is completed; or (3) the date the hospitalization for which the claim is made is completed. TEX.REV.CIV.STAT.ANN. art. 4590i, § 10.01 (Vernon Supp.1995); *Rowntree v. Hunsucker*, 833 S.W.2d 103, 104 (Tex. 1992); *Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex.1987). Here, Dr. Diaz asserted that the limitations period began to run on August 6, 1984—the date Dr. Diaz last treated and prescribed the Cytoxan for the decedent.

Although the article 4590i, § 10.01 statute imposes an absolute two-year limitations period, the statute has been subject to constitutional challenge under the "open courts" provision in the Texas Constitution. *Morrison*

*v. Chan,* 699 S.W.2d 205, 207–08 (Tex.1985). The "open courts" provision provides that "[a]ll courts shall be open, and every person for an injury done him, in his ... person, shall have remedy by due course of law." Tex. Const. art. 1, § 13. This provision is premised upon the rationale that the legislature has no power to make a remedy by due course of law contingent upon an impossible condition. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 355 (Tex.1990). Because the very nature of some medical malpractice cases makes it inherently impossible for an injured plaintiff to discover his injury within two years of the actual act of malpractice, Texas courts have used the "open courts" provision to defeat the strict application of the article 4590i, § 10.01 two-year statute of limitations in such cases where justice demands that the plaintiff be given a reasonable opportunity to discover that he had been wronged and bring suit. *See e.g., Neagle v. Nelson,* 685 S.W.2d 11 (Tex.1985) (concluding that it was impossible for the plaintiff to discover the sponge left in his abdomen within two years after his appendectomy); *Nelson v. Krusen,* 678 S.W.2d 918 (Tex.1984) (holding that it was impossible for the plaintiffs to discover their son had muscular dystrophy within the applicable two years). Thus, the only means to avoid the absolute two-year statute of limitations under article 4590i, § 10.01, is to show that article 4590i, § 10.01 violates the "open courts" provision.[1]

To establish an "open courts" violation, a plaintiff must satisfy a two-part test. *Bala v. Maxwell,* 909 S.W.2d 889, 893 (Tex.1995); *Moreno,* 787 S.W.2d at 348. First, he must establish that he has a well-recognized common law cause of action. *Bala,* 909 S.W.2d at 893; *Moreno,* 787 S.W.2d at 348. Second, he must show that the restriction of his claim

is unreasonable when balanced against the purpose of the statute. *Bala,* 909 S.W.2d at 893; *Moreno,* 787 S.W.2d at 348. Because the appellant has no common law right to bring either a wrongful death or survival action, she technically cannot establish an "open courts" violation. *Bala,* 909 S.W.2d at 893.

However, in light of the manner in which appellant formulates her "open courts" provision argument, it is necessary to analyze her argument in terms of Mr. Westphal's medical malpractice claim had he pursued it immediately prior to his death. A medical malpractice cause of action is a well-established common law cause of action. *Moreno,* 787 S.W.2d at 357.

A limitations statute violates the "open courts" provision if the statute bars a common law cause of action before the litigant had a reasonable opportunity to (i) discover the wrong and (ii) bring suit. *See Krusen,* 678 S.W.2d at 923. The relevant inquiry in an "open courts" challenge to article 4590i, § 10.01 is whether the plaintiff had a reasonable opportunity to discover the wrong and bring suit within the two-year statute of limitations period.[2] *Nelson,* 685 S.W.2d at 12; *Krusen,* 678 S.W.2d at 923; *Del Rio v. Jinkins,* 730 S.W.2d 125, 128 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.) (opinion on reh'g); *Desiga v. Scheffey,* 874 S.W.2d 244, 247 (Tex.App.—Houston [14th Dist.] 1994, no writ). If the plaintiff was denied this opportunity, then the article 4590i, 10.01 statute is deemed unconstitutional insofar as it cuts off a cause of action before the plaintiff knew a cause of action existed. *Nelson,* 685 S.W.2d at 12; *Krusen,* 678 S.W.2d at 923.

The Texas Supreme Court equates "discovery of the wrong" with "discovery of the

---

1. It is significant to note that article 4590i, § 10.01 abolished application of the "discovery rule" in medical malpractice cases governed by the Medical Liability Act. *Morrison,* 699 S.W.2d at 208. The "discovery rule" is a judicially constructed test, which is used to determine when a cause of action accrued. *Moreno,* 787 S.W.2d at 351. When applied, the "discovery rule" operates to toll the running of the statute of limitations until the time that the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of his injury. *Id.*

2. The "open courts" provision inquiry and analysis is somewhat similar to, but should not be confused with, the "discovery rule." *See Del Rio v. Jinkins,* 730 S.W.2d 125, 128 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.); *Desiga v. Scheffey,* 874 S.W.2d 244, 247–48 (Tex.App.—Houston [14th Dist.] 1994, no writ). The inquiry in a "discovery rule" case is whether the plaintiff discovered, or through the exercise of reasonable care and diligence should have discovered, the nature of his injury. *Moreno,* 787 S.W.2d at 351.

cause of action" and treats the two terms as synonymous. *See Hellman v. Mateo,* 772 S.W.2d 64, 66 (Tex.1989). Whether an injured party had a reasonable opportunity to discover his cause of action turns on whether the party discovered, or should have discovered, his cause of action. *Id.* at 66.

As applied to the facts of this case, the relevant inquiry then is whether the decedent discovered, or should have discovered, his cause of action and then timely filed suit within the two year period following his last treatment date with Dr. Diaz in August 1984. Dr. Diaz asserts that the decedent discovered his cause of action in the Fall of 1984 when he discovered the first symptom of his Cytoxan-induced injury—his urinary tract bleeding. Appellant argues otherwise, claiming the decedent first discovered his cause of action in 1991 when he first learned of his bladder cancer. In essence, appellant contends the two medical conditions—the urinary tract bleeding and the bladder cancer—represent two separate injuries, each with two separate causes of action. I disagree.

Under Texas law, it is well settled that a plaintiff has but one cause of action for the losses, injuries, and damages arising and resulting from a single breach of duty. *Pecorino v. Raymark Indus., Inc.,* 763 S.W.2d 561, 569 (Tex.App.—Beaumont 1988, writ denied). Here, appellant alleged in her petition that Dr. Diaz breached his duty by wrongfully overprescribing the Cytoxan for the decedent. Also, appellant alleged in her petition and acknowledged in her deposition that such overtreatment of the Cytoxan proximately caused the decedent to develop urinary tract bleeding and urinary problems, as well as fatal bladder cancer; the decedent's bladder cancer developed some years after his urinary tract bleeding. Further, appellant acknowledged in her affidavit that the Cytoxan caused both the bladder cancer and the urinary tract bleeding when she stated, "In my mind the cancer diagnosis was a different injury from Cytoxan than the bleeding which Mike had been experiencing before."

Analogous federal case law is instructive on this issue. In a Fifth Circuit case, *Graffagnino v. Fibreboard Corp.,* Mr. Graffagnino developed asbestosis and then later developed mesothelioma. *Graffagnino,* 776 F.2d 1307, 1308 (5th Cir.1985), Both medical conditions resulted from his exposure to asbestos. *Id.* When Mr. Graffagnino was alive, he filed suit to recover damages for his asbestosis injury and received a settlement. *Id.* Later, after he developed fatal mesothelioma and died, his wife filed suit to recover damages for his mesothelioma injury. *Id.* The *Graffagnino* court, in a per curiam opinion, espoused:

> Under Texas law, exposure to asbestos can give rise to only a single cause of action for all injuries that are caused by that exposure, whether or not all the injuries have become manifest at the time the cause of action accrues.

*Id.*

In another Fifth Circuit asbestos case, *Gideon v. Johns–Manville Sales Corp.,* the court opined that, once injury results, there is but a single tort and not a series of separate torts for each resultant harm. *Gideon,* 761 F.2d 1129, 1136 (5th Cir.1985). A cause of action "inheres in the causative aspects of a breach of a legal duty, the wrongful act itself, and not in the various forms of harm which result therefrom...." *Id.* at 1136–37 (quoting 24 A.L.R. *Single Cause of Action* § 2[a] (4th ed. 1983)). The *Gideon* court held:

> Under Texas law, therefore, [**the plaintiff**] **has but one cause of action for all damages caused by the defendant's legal wrong;** the diseases that have developed and will in probability develop are included within this cause of action, for they are but part of the sequence of harms resulting from the alleged breach of legal duty.

*Gideon,* 761 F.2d at 1137 (our emphasis added).

Further, in *Tennessee Gas Transmission Co. v. Fromme,* 153 Tex. 352, 269 S.W.2d 336, 337–38 (1954), the Texas Supreme Court held that a cause of action accrues at the time of the wrongful conduct, not on the date when the extent of the damages were fully ascertainable. The *Fromme* court explained that limitations will run from the time the wrongful act was committed and will bar an action for damages resulting from the wrongful act,

even if the damages were not fully developed during the limitations period. *Fromme*, 269 S.W.2d at 337–38 (citing *Houston Water Works Co. v. Kennedy*, 70 Tex. 233, 8 S.W. 36, 37 (1888)).

Based on the foregoing Texas and federal case law, I conclude that here the decedent discovered, or should have discovered, his cause of action when he experienced his initial injury and learned that it was caused by Dr. Diaz's wrongful overprescription of the Cytoxan. Having so concluded, I now turn to the dispositive issue at hand—whether Dr. Diaz sustained his summary judgment burden and proved as a matter of law that the decedent discovered his cause of action within the two-year limitations period, but failed to timely file suit.

Dr. Diaz asserts in his summary judgment motion that the decedent learned, as early as the Fall of 1984, that his injury—the urinary tract bleeding—was caused by Dr. Diaz's wrongful conduct. As his summary judgment evidence, Dr. Diaz submitted excerpts from appellant's deposition. In her deposition, appellant testified that, in the Fall of 1984 when the decedent first experienced his urinary tract problems, at least two doctors told him that he had been taking the Cytoxan for too long and advised him to quit taking it. Further, appellant testified that the reason Mr. Westphal did not go back to see Dr. Diaz was "[b]ecause we had doctors tell us that he had been on [the Cytoxan] too long." Appellant also testified that at that time, both she and the decedent shared the belief that Dr. Diaz had done wrong and made an error in professional judgment by keeping the decedent on the Cytoxan as long as he did. Appellant further testified that, back in the Fall of 1984, both she and the decedent knew and believed that "Dr. Diaz had done [the decedent] wrong and had caused him injury." The injury to which she was referring was the decedent's initial urinary tract bleeding and bladder problems.

Appellant offered no contradictory evidence to raise a fact issue as to when the decedent discovered his initial urinary problems and the cause of these problems.

Under article 4590i, § 10.01, the two-year statute of limitations on decedent's claim started to run on August 6, 1984—the date of Dr. Diaz's last treatment. The limitations period expired, at the latest, on approximately October 21, 1986.[3] Dr. Diaz submitted uncontroverted summary judgment evidence proving the decedent discovered his cause of action in the Fall of 1984, well within the limitations period. Appellant, however, did not file suit until May 1993, more than six years after the limitations period had expired. The trial court therefore properly granted summary judgment in favor of Dr. Diaz on his limitations defense.

Accordingly, I would overrule appellant's sole point of error and affirm the judgment of the trial court.

## OPINION ON MOTION FOR REHEARING

We overrule Dr. Diaz's motion for rehearing and motion for rehearing en banc. Since we issued our opinion in this case, the Texas Supreme Court has interpreted the minors' tolling provision of the Medical Liability Act. *See Baptist Memorial Hosp. Sys. v. Arredondo*, 39 Tex.Sup.Ct.J. 286, —— S.W.2d —— [1996 WL 51168] (February 9, 1996) (per curiam). Because our decision in this case is based on our interpretation of the same tolling provision, we write briefly to address *Baptist Memorial Hospital.*

The *Baptist Memorial Hospital* case involved parents who sued the hospital after their newborn baby died. As in our case, their wrongful death claim was governed by the statute of limitations from the Medical Liability Act:

Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care

---

**3.** This date takes into account the seventy-five day tolling period had the Westphals given proper notice of their medical malpractice claim, pursuant to Tex.Rev.Civ.Stat.Ann. art. 4590i, § 4.01 (Vernon Supp.1995). According to article

4590i, § 4.01(c), proper notice "shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice...." Tex.Rev.Civ.Stat.Ann. art. 4590i, § 4.01(c) (Vernon Supp.1995).

treatment that is the subject of the claim or hospitalization for which the claim is made is completed; *provided that, minors under the age of 12 years shall have until their 14th birthday in which to file, or have filed on their behalf, the claim.*

TEX.REV.CIV.STAT.ANN. art. 4590i, § 10.01 (Vernon Supp.1996) (emphasis supplied). The language italicized above is the minors' tolling provision, which the Arredondos tried to apply to their wrongful death suit. The San Antonio Court of Appeals held that the adult wrongful death claimants could use the minors' tolling provision because the decedent was a minor. See *Arredondo v. Hilliard*, 904 S.W.2d 754, 760–61 (Tex.App.—San Antonio 1995), *rev'd sub nom. Baptist Memorial Hosp. Sys. v. Arredondo*, 39 Tex.Sup. Ct.J. 286, —— S.W.2d —— (February 9, 1996) (per curiam).

The supreme court disagreed:

This provision tolls a claim's accrual only when it is filed by a minor or on a minor's behalf. A statutory beneficiary files a wrongful death action to recover her own damages based on a minor's death. Therefore, the tolling provision of section 10.01 that applies to a minor does not apply to an adult's wrongful death claim.

*Baptist Memorial Hosp. Sys.*, 39 Tex.Sup. Ct.J. at 287, —— S.W.2d at —— (citation omitted).

In our case, we applied the minors' tolling provision to Eric Westphal's statutory claims because he is a minor with a wrongful death claim filed on his behalf. We expressly distinguished between Eric's claim and his mother's claim because Carolyn Westphal could not make use of the minors' tolling provision. Accordingly, we applied the same interpretation of this tolling provision that the supreme court approved by rejecting the San Antonio court's contrary interpretation.

■ Furthermore, the *Baptist Memorial Hospital* decision shows the importance of analyzing the statutory wrongful death claim separately from the underlying common law claim for malpractice. See *id.* Because the wrongful death claim is a derivative claim, a defendant moving for summary judgment based on limitations may argue that the claim is barred because

(1) the *claimant's* statutory wrongful death claim was not filed within two years from the date the wrongful death claim accrued, or

(2) the *decedent's* common law personal injury claim would not have been filed within two years from the date the personal injury claim accrued if the claim had been filed immediately before the decedent died.

*Longoria v. United Blood Services*, 907 S.W.2d 605, 613–14 (Tex.App.—Corpus Christi 1995, writ requested); see generally *Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343 (Tex.1992). If the defendant-movant prevails on either limitations argument, the court should grant summary judgment.

■ This two-track statute of limitations analysis becomes more complicated in a wrongful death suit based on a health care liability claim. In such cases, the limitations provision from the Medical Liability Act governs both the claimant's statutory wrongful death claim and the decedent's hypothetical common law negligence claim for malpractice. Although both claims are governed by the same limitations statute, the court of appeals cannot avoid the two-track limitations analysis: this is the mistake that the San Antonio court of appeals made in *Arredondo v. Hilliard*, 904 S.W.2d 754 (Tex. App.—San Antonio 1995), *rev'd sub nom. Baptist Memorial Hosp. Sys. v. Arredondo*, 39 Tex.Sup.Ct.J. 286, —— S.W.2d —— (February 9, 1996) (per curiam).

The San Antonio court correctly held that the baby's common law medical malpractice claim would have been timely if it had been filed on the date of the baby's death, i.e., two days after he was injured. *Id.* at 760–61. However, the court did not complete the two-track analysis by determining whether the parents' statutory wrongful death suit was filed within the two-year limitations period set by the Medical Liability Act. Instead, the court held that the statute of limitations on the adults' claims was subject to the minors' tolling provision.

In the instant case, we employed the two-track limitations analysis to the claims of

both Eric Westphal and his mother. First, we sought to ascertain whether the claimants' statutory wrongful death claims were filed within the period prescribed under the Medical Liability Act. Carolyn Westphal's wrongful death claim is barred because it was not "filed within two years from ... the date the medical or health care treatment that is the subject of the claim" was completed. TEX.REV.CIV.STAT.ANN. art. 4590i, § 10.01. However, Eric Westphal has until his "14th birthday in which to file, or have filed on [his] behalf, the claim" because he is "under the age of 12 years." *Id.* This is exactly consistent with the *Baptist Memorial Hospital* interpretation of the tolling provision.

Next, we asked whether the summary judgment proof conclusively established that the decedent's hypothetical negligence claim would have been barred if it had been filed on the day he died. The leading case regarding a defendant-doctor's burden when moving for summary judgment based on limitations under the Medical Liability Act is *Hellman v. Mateo*, 772 S.W.2d 64 (Tex.1989). *Hellman* provides:

> Having determined that [the plaintiff-patient] alleged and expressly presented the facts necessary to challenge the constitutionality of article 4590i, we must now consider whether [the defendant-doctor] carried his burden of establishing his limitations defense as a matter of law. *In other words, [the defendant-doctor] must conclusively establish that there is no genuine issue of material fact concerning the time when [the plaintiff-patient] discovered or should have discovered the nature of the injury and cause of action.*

*Id.* at 66 (emphasis supplied, citations omitted). The language italicized above is the discovery rule, which the defendant must negate as part of its summary judgment burden of proof.

Under *Hellman*, Dr. Diaz had the burden of conclusively negating the discovery rule. He did not meet his burden of proof because he failed to present any expert testimony to resolve the disputed issue regarding when the decedent should have discovered the nature of his injury. The supreme court's re-

cent *Baptist Memorial Hospital* decision does not overrule *Hellman.* Accordingly, the *Baptist Memorial Hospital* decision does not suggest any different analysis of the limitations provision applicable to the decedent's hypothetical health care liability claim based on common law negligence.

Having considered the arguments in both of his motions for rehearing as well as the recent supreme court authority relevant to this case, we overrule Dr. Diaz's two motions for rehearing.

SEERDEN, C.J., dissents.