Patricia CARRILLO, Appellant,

v.

**ANTHONY INDEPENDENT SCHOOL DISTRICT, the Board of Trustees of Anthony Independent School District, and Jimmy Fickling, Appellees.**

No. 08–95–00202–CV.

Court of Appeals of Texas,
El Paso.

April 11, 1996.

---

Daniel R. Malone, Malone & Davie, El Paso, for appellant.

Larry Baskind, Henry C. Hosford, Baskind, Samaniego & Hosford, P.C., El Paso, for appellee.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

This appeal arises from a summary judgment granted in favor of Appellees, Anthony Independent School District ("AISD"); the school district's board of trustees ("school board"); and Jimmy Fickling ("Fickling"), superintendent of AISD. Appellant, Patricia Carrillo ("Carrillo"), alleges that she was wrongfully terminated, and she sued Appellees for breach of contract and violation of her due process rights pursuant to 42 U.S.C. § 1983, the United States Constitution, and the Texas Constitution. We reverse and remand.

### SUMMARY OF THE EVIDENCE

AISD hired Carrillo in December 1985 to teach English as a Second Language ("ESL") in its high school. Carrillo asserts that she entered the employment relationship with the understanding that her duties eventually would be extended to teaching Spanish as well as ESL. AISD argues that Carrillo was hired solely to teach ESL and that their contractual relationship was limited by this understanding. The summary judgment evidence reflects that Carrillo taught ESL at AISD for one and one-half years and that she had no other assignments during that period. In March 1986, Carrillo passed the Texas Examination for Current Administrators and Teachers ("TECAT"), which is a prerequisite to certification as a teacher in Texas. Despite certification earned through passage of the TECAT, an individual employed to teach certain specific subjects must complete additional requirements for certification, including passage of the Examination for the Certification of Educators in Texas ("EXCET"). ESL is one of those subject areas requiring that a teacher pass both the TECAT and the EXCET.

AISD entered into a probationary contract with Carrillo to teach during the 1986–1987 school year. Throughout this time, ESL continued to be her sole teaching assignment. Because Carrillo was not certified to teach ESL, she was granted a temporary classroom assignment permit by the Texas Education Agency ("TEA") which allowed her to teach ESL for one year while she completed her remaining requirements for certification. These requirements were contained in a deficiency plan issued to Carrillo by Sul Ross State University. Although Carrillo diligently completed some of the requirements, she was not able to pass the EXCET. As a result, she did not complete her deficiency plan and her temporary permit lapsed at the end of the 1986–1987 school year. Her inability to present valid certification to teach ESL during the 1987–1988 school year is the center of the controversy before us. Carrillo maintains that her failure to certify in ESL is not dispositive of the contractual and due process issues. Appellees assert that certification was a condition precedent and that without valid certification, the contract is void.

Carrillo first learned of the EXCET requirement from the principal of Anthony High School, Manuel Aguilar ("Aguilar"), in February 1987. She took and failed the test at that time. Aguilar advised her that she could retake the exam the next time it was offered. After the 1986–1987 school year, but prior to the time the next EXCET was given, AISD entered into another probationary contract with Carrillo for the 1987–1988 school year. This contract was to run from August 25, 1987 through June 2, 1988. On June 13, 1987, Carrillo retook the EXCET. She received the results of that exam in July, but did not report them to either Aguilar or Fickling. Sometime in early August 1987, Aguilar's secretary called Carrillo to learn her results on the EXCET. Carrillo informed her that she had failed. Aguilar then told Fickling of the result. Fickling called the TEA and spoke with Dr. Nolan Wood, who in turn advised Fickling that Carrillo was unemployable.

Fickling then asked Aguilar to schedule a meeting with Carrillo, which was ultimately

arranged for the Monday on which the teachers were to report to work for the school year. Aguilar informed Carrillo that she was not qualified to teach ESL, but that she might be able to teach Spanish until she passed the EXCET. Aguilar and Carrillo then walked over to Fickling's office. Fickling informed Carrillo that she was not qualified to teach and that she would not be able to carry any assignments with AISD. He did not offer her an assignment to teach Spanish or business administration, the only subject areas in which she was certified to teach, because veteran teachers already filled those positions. Fickling handed Carrillo a form entitled "Termination or Exit Report of School Employee" and conditioned the release of her last paycheck upon her signing this document. Carrillo refused to sign it, taking it instead to an attorney. She later signed the form under protest[1] and collected her last paycheck.

Shortly thereafter, Carrillo began teaching elementary Spanish in the Ysleta Independent School District. This job, however, paid less and was considerably farther from her Canutillo residence than AISD. She sued for the difference in pay, mileage, other incidental expenses, emotional distress, and attorney's fees. Both Carrillo and Appellees filed motions for summary judgment and the trial court granted Appellees' motion. On appeal, Carrillo brings forward twelve points of error. The first eight complain of the trial court's granting summary judgment. The remaining four assert that Carrillo is entitled to summary judgment as a matter of law.

### STANDARD OF REVIEW

The standard of review on appeal of a summary judgment is whether the successful movant at the trial level carried the burden of showing that no genuine issue of material fact existed and that a judgment should be granted as a matter of law. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548 (Tex. 1985); *Cortez v. Liberty Mut. Fire Ins. Co.,* 885 S.W.2d 466, 469 (Tex.App.—El Paso

1994, writ denied). Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to required elements of the plaintiff's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that no genuine issue of material fact as to one or more elements of plaintiff's cause or claim exists. *Gibbs v. General Motors, Corp.,* 450 S.W.2d 827, 828 (Tex.1970). In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movants favor. *Nixon,* 690 S.W.2d at 548–49; *DeLuna v. Guynes Printing Co. of Texas, Inc.,* 884 S.W.2d 206, 208 (Tex.App.—El Paso 1994, writ denied). When the defendant is the movant and when summary judgment evidence disproving at least one essential element of each of the plaintiff's causes of action is submitted, summary judgment should be granted. *Perez,* 819 S.W.2d at 471; *Bradley v. Quality Serv. Tank Lines,* 659 S.W.2d 33, 34 (Tex.1983); *Cortez,* 885 S.W.2d at 469. When the summary judgment does not state the grounds upon which it was granted, the judgment will be affirmed if any of the theories advanced in the summary judgment motion are meritorious. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993); *Rogers v. Ricane Enter., Inc.,* 772 S.W.2d 76, 79 (Tex. 1989); *Hernandez v. Kasco Ventures, Inc.,* 832 S.W.2d 629, 632 (Tex.App.—El Paso 1992, no writ). However, a summary judgment will be affirmed only upon the grounds specifically stated in the motion. *McConnell v. Southside Independent School District,* 858 S.W.2d 337, 339 (Tex.1993).

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

Before addressing the substantive breach of contract and due process claims, we must consider whether the trial court had jurisdiction. Contemporaneous with the filing of their summary judgment motion, Appellees amended their original answer to include a plea to the trial court's jurisdiction,

---

1. She typed the following statement on the form: "I don't believe my termination is legal. My

Attorney is preparing an official response to the A.I.S.D." The form is dated August 31, 1987.

asserting that the trial court lacked subject matter jurisdiction until Carrillo exhausted her administrative remedies. As a general rule, a teacher complaining of wrongful discharge must exhaust all available administrative remedies if the subject matter involves questions of fact. *See Barrientos v. Ysleta Indep. School Dist.*, 881 S.W.2d 159, 160–61 (Tex.App.—El Paso 1994, no writ); *Roberts v. Hartley Indep. School Dist.*, 877 S.W.2d 506, 507 (Tex.App.—Amarillo 1994, writ denied); *Mitchison v. Houston Indep. School Dist.*, 803 S.W.2d 769, 771–72 (Tex.App.—Houston [14th Dist.] 1991, writ denied). An exception to this general rule applies when the plaintiff asserts federal law claims, and recourse may be sought in a court of law. *Mitchison*, 803 S.W.2d at 773. Carrillo asserted both a federal and state constitutional due process claim and a claim pursuant to 42 U.S.C. § 1983. Therefore, exhaustion of administrative remedies was not a prerequisite to seeking relief in a court of law. *See Patsy v. Board of Regents*, 457 U.S. 496, 500–01, 102 S.Ct. 2557, 2560, 73 L.Ed.2d 172, 177–78 (1982) (stating categorically that exhaustion of administrative remedies, whether federal or state, is not a prerequisite to an action under Section 1983).

AISD nevertheless asserts that the claims should be bifurcated. Conceding that the federal claims may be brought in a court in the first instance, it argues that the breach of contract claim must be channeled through the administrative process. Although several courts, including this one, have held that the termination of a teacher involves questions of fact peculiarly within the province of administrative review, no firm rule exists mandating resort to the administrative process in *all* cases in which a factual inquiry is necessary. *See, e.g., Barrientos*, 881 S.W.2d at 160; *Mitchison*, 803 S.W.2d at 772. A proper resolution of the federal claims is predicated upon whether the employment contract was breached. This question is integrally tied to whether Carrillo's constitutional due process rights have been denied. If the claims were separated, a similar factual development would be required in two

different proceedings. If the federal claims were abated pending resolution of the breach of contract claim, an inappropriate forum would develop the factual record necessary to the resolution of the federal claims and would be contrary to the intention that these federal claims be exempt from administrative review. *See Patsy*, 457 U.S. at 513–15, 102 S.Ct. at 2566–67, 73 L.Ed.2d at 185–87. We conclude that Carrillo was not required to exhaust her administrative remedies prior to filing suit in the court below. A contrary holding would fly in the face of the federal constitution as interpreted by the United States Supreme Court. Points of Error Nos. Four and Five are sustained to the extent that the summary judgment was based on Carrillo's failure to pursue administrative remedies.[2]

### *BREACH OF CONTRACT*

#### *Certification and the Validity of Teachers' Contracts*

■ In her first three points of error, Carrillo asserts that a material fact issue exists with regard to whether a valid contract was entered into between the parties. Absent a valid contract, Carrillo possessed no property interest subject to protection under federal statute or under the federal or state constitutions. AISD claims that the employment contract entered into with Carrillo for the 1987–88 school year was conditioned upon her teaching ESL. The terms of an employment contract must be given a plain-meaning interpretation if they are clear and unambiguous. *See Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529–30 (Tex. 1987) (discussing in general terms the parol evidence rule); *Hussong v. Schwan's Sales Enter., Inc.*, 896 S.W.2d 320, 324 (Tex.App.—Houston [1st Dist.] 1995, no writ) (applying the parol evidence rule to an employment contract); *cf. Perry v. Houston Indep. School Dist.*, 902 S.W.2d 544, 547 (Tex.App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.) ("The interpretation of an unambiguous contract is a question of law for the court."). AISD

---

**2.** Because of the resolution of these points of error, we need not address Carrillo's other grounds for failing to pursue administrative rem-

edies contained in Points of Error Nos. Six through Eight.

concedes that the contract in question was unambiguous. Therefore, parol evidence may not be used to add to or alter the terms of the contract. The relevant contract provisions read:

1. The Employer hereby agrees to employ the Teacher and the Teacher hereby agrees to serve the Employer by engaging in classroom instruction of *academic subjects* as assigned by the Superintendent of Schools....

．　　．　　．　　．　　．

3. It is understood and agreed by the parties to this agreement that the Superintendent of Schools *shall have the right to assign* such duties to the Teacher as the Employer shall deem proper, and *may, from time to time, assign or reassign* the Teacher to other or additional duties than those contemplated hereunder.

4. It is understood and agreed by the parties to this agreement that the Teacher shall teach to the best of his or her skill and ability, and shall be governed by and discharge the duties *required by the school laws of this State* and such local rules and regulations as are in effect at this time or may be adopted by the Employer during the life of this contract. [Emphasis added].

Notwithstanding these provisions, no mention is made in the contract itself that Carrillo was employed to teach ESL exclusively nor that her certification to teach ESL was a necessary condition of employment. AISD argues that the assignment clauses in the contract must be interpreted to limit the phrase "academic subjects." In essence, it claims that the school district needed an ESL teacher and Carrillo was hired specifically for that purpose; her failure to pass the EXCET prevented AISD from allowing her to teach ESL and they had no other need for her services. Even assuming these facts to be true, they do not alter the essential fact that Carrillo's contract was not conditioned upon her teaching ESL. Her contract provides that she was hired to teach "academic subjects." This term is broad enough to encompass the other subjects which Carrillo was qualified to teach.

As a corollary to this argument, AISD asserts that because Carrillo was not certified to teach ESL, she could not comply with state law and at the same time honor her contract. We disagree. This contention requires a determination that the contract specifically limited Carrillo to teaching ESL; a determination which cannot be made in the absence of parol evidence. The admittedly unambiguous nature of the contract precludes our consideration of parol evidence. Although Carrillo failed the EXCET, she had passed the TECAT and she was certified to teach business administration and Spanish. Her second failure of the EXCET did not affect this certification. AISD relies upon *Swanson v. Houston Indep. School Dist.*, 800 S.W.2d 630 (Tex.App.—Houston [14th Dist.] 1990, writ denied), which held that teachers who had failed the TECAT, and thus had no certification in any respect, had no employment contract giving rise to a protected property right. *Id.* at 634. Carrillo, unlike the teachers in *Swanson*, did possess a valid teaching certificate that ostensibly complied with the terms of her contract. If the school district had no need for her services in the "academic subjects" for which she was certified, it had an obligation to respect its contractual relationship and to observe any property interest possessed by Carrillo. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494, 501 (1985); *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972); *see also* William T. Armstrong & Rosemary L. Hollan, 16 St. Mary's L.J. 783, 808 (1985) ("Full constitutional protections come into play should the district choose to terminate the probationary contract teacher during the term of the contract."). We conclude that as a matter of law, a valid contract existed.

### Termination of Employment

■ As an alternative to its void contract argument, AISD asserts that Carrillo was never terminated because only the school board is entitled to terminate a teacher for cause. Here, Carrillo was simply told that she was not qualified to teach by the school's superintendent, who did not possess the authority to discharge any teacher for any rea-

son. Because no action was taken by the school board effectuating a termination of Carrillo, AISD urges that Carrillo was never terminated. *See* TEX.EDUC.CODE ANN. §§ 13.109 (listing good cause reasons for terminating a probationary teacher during the school year); 13.111 (requiring notice of any proposed actions by the board of trustees); 13.112 (requiring a hearing before the board of trustees if requested by the teacher within ten days of receiving notice); 13.114 (delegating final decision making authority to the board of trustees) (Vernon 1991). In essence, AISD argues that Carrillo had been assigned the duties of teaching ESL, but she was unable to resume those duties during the 1987–1988 school year because she failed to obtain certification. As a result, AISD was prohibited by law from allowing Carrillo to teach ESL and from paying her for those services. *See id.* Section 13.045(b) ("A teacher or superintendent who does not hold a valid certificate or emergency permit shall not be paid for teaching or work done before the effective date of issuance of a valid certificate or permit.").[3] Because Carrillo was not certified to teach ESL and because the district had no vacancies in the subject areas in which Carrillo was certified, she could not be reassigned. AISD argues that this "inability to reassign" is not tantamount to termination. Carrillo asserts that the facts themselves demonstrate as a matter of law that

she was terminated and that her contract with the school district was breached.

We disagree with both assertions. Instead, we believe a fact issue is presented which precludes summary judgment. The summary judgment evidence is sparse at best on the issue of termination. Fickling dances delicately around the question,[4] but the fact remains that Carrillo was compelled to sign a form entitled "Termination or Exit Report of School Employee." She was assigned no future duties with the district and was not expected to show up for work. She was removed from the payroll. To a disinterested bystander, this collection of circumstances may indeed constitute termination. We conclude that a jury should determine whether Carrillo's "exit nature of not returning" was in fact a termination. Accordingly, we sustain Carrillo's Points of Error Nos. One through Three.

### CARRILLO'S SUMMARY JUDGMENT MOTION

Our resolution of the termination issue obviates any consideration of Carrillo's Points of Error Nos. Nine through Twelve. Because a fact issue exists as to whether Carrillo was terminated, she is not entitled to judgment as a matter of law.

---

**3.** This argument fails to distinguish between that basic teacher certification, held by Carrillo and complying with her contract, and certification to teach in a specific field. This section deals only with that certification necessary to enter into a valid teaching contract.

**4.** The record provides:

> Q. I'm handing you what's been previously marked as defendant's exhibit 10 for identification. Do you recognize that document?
> A. Yes.
> Q. What is it?
> A. It's a termination or exit report, required to be on file, of all employees that leaves [sic] the employment of the district for whatever reason.
> Q. Is that your signature at the bottom of the page?
> A. Yes.
> Q. And I guess it's your position that this—it's entitled, "Termination or Exit Report of School Employee," and I guess in this situation, it's your position that it's an exit report

> rather than a termination report. Is that correct?
> A. Yes, that's correct.
> Q. Is this the normal form that's used when an employee ends their employment at the Anthony Independent School District?
> A. This is the form. It's in our policy manual, and it is the form that's used for all employees that leave the employment of the district for any reason at all, every reason, all reasons.
> Q. So this form is used both when a teacher is fired or when a teacher voluntarily resigns or in any circumstance like that.
> A. Yes, same form.
> Q. Toward the middle of the page, it says, "Nature of Termination," and you've got typed in, "Did not meet the state requirements for the EXCET level test in subject area taught." So that really—that statement is not really correct, in that it's your position it was not a termination.
> A. Well, nature of termination, that's true, it should be—well, nature of—exit nature of not returning.

## CONCLUSION

We reverse and remand for trial.