**UPTON COUNTY, Texas, Appellant,**

**v.**

**Larry Joe BROWN, Appellee.**

**No. 08–96–00378–CV.**

Court of Appeals of Texas,
El Paso.

Sept. 4, 1997.

Rehearing Overruled Oct. 8, 1997.

C. Rex Hall, Jr., Allison & Associates, Austin, for appellant.

Andrew Trusevich, Ford, Yungblut, White & Salazar, P.C., Dallas, David J. Guillory, Nacogdoches, for appellee.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

## OPINION

BARAJAS, Chief Justice.

This is an appeal from a finding by a jury that Appellant, Upton County, violated both the Texas Whistleblower Act and Appellee's, Larry Joe Brown, First Amendment rights. We affirm.

## I. SUMMARY OF THE EVIDENCE

Appellee, Larry Joe Brown, an employee of Upton County, was terminated from employment on November 20, 1992. He filed suit on February 19, 1993 and subsequently died on March 22, 1995. On June 1, 1995, pleadings were amended alleging a violation of 42 U.S.C. § 1983. At the time of his termination, Appellee was advised that the reasons for such termination were: (1) abusing County equipment; (2) talking too much and wasting time; (3) not working well with other employees; and (4) threatening his supervisor. The record in the instant case shows that prior to his termination, Appellee was openly vocal about alleged OSHA violations. After taking ill, Appellee complained that the County was not providing proper safety equipment regarding the spreading of a new liquid fertilizer. In response, the County issued "safety equipment" which consisted of a paper mask and was further advised that such paper mask was "plenty good." Within two days after spraying the fertilizer, Appellee began vomiting, contracted diarrhea, whelps, rashes, and was further unable to eat.[1] He went to the doctor who gave him a note saying that he was not to be exposed to the fertilizer. He gave the doctor's note to his supervisor, Jug Strieglar.

The record shows that in spite of the specific note from the physician, Appellee was subsequently sent to work in an area that had been sprayed with the identical fertilizer a few days earlier. Upon learning of Appellee's work assignment, his physician called the county judge and advised her not to permit Appellee to exposure to any more fertilizer.

Appellee and his wife visited the county judge and expressed their concerns regarding the lack of safety equipment. The Browns feared that their discussions with the county judge would affect the relationship between Appellee and his supervisors. Soon after he spoke with the county judge, he was sent to an old county yard which was storing the identical fertilizer which made him sick on the previous two occasions. As expected, he once again developed whelps, diarrhea, vomiting, headaches, and again was unable eat. Appellee also reported OSHA violations to the city judge, his supervisor, and a county commissioner on instructions from OSHA.

In addition to complaining about his exposure to the fertilizer, Appellee also observed and reported the use of county equipment for personal use, and the use of county equipment at a private country club. He reported that county employees were working at the private country club during county time, and was himself told by two Upton County Commissioners to likewise go and do work at the club.[2] In addition to all of the above, Appellee observed that approximately 500 gallons of Upton County gasoline was missing from the county gasoline tank. The record demonstrates that the missing gasoline was reported to County Commissioner Kluthe who simply told Appellee to keep his mouth shut and mind his own business. Appellee additionally reported this misuse and theft of gasoline to the city judge as well as a local officer of the Texas Department of Public Safety. Appellee was ultimately fired from his employment with Upton County. The

1. Appellee's deposition was read at trial. He stated that, "I had whelps come up on me, stick out like quarter inch whelps, and I had headaches and vomiting." He stated that the swelling was so bad that his "gum busted open on the inside of [his] mouth."

2. The record in the instant case shows that one of the county commissioners was a member of this country club.

day of his termination, both Appellee and his wife believed the termination was in retaliation for reporting the above violations of law.

The record shows that on the evening of his termination, Appellee invoked the only appeal procedure he knew of, i.e., contacting Upton County Commissioner Kelton.[3] Commissioner Kelton arrived at Appellee's home after work at which time Appellee sought to appeal his termination directly to him. Commissioner Kelton stated that "he would check into it."

Appellee's supervisor, Strieglar testified that if his employees did not like his policy, they would have to go and talk with a county commissioner. Another former Upton County employee, testified that he was fired by Strieglar, but in order to get his job back, he had to likewise go and talk with a county commissioner. The former employee testified at trial that in all the time he was working for Upton County, he did not know of a single individual that had been fired that had gone to talk to a county commissioner, and who did not get their job back. Upton County contends that although two Upton County personnel policy manuals were introduced into evidence, the issue of which one was in force at the time of the termination was not clearly resolved and that neither contains a provision for a formal grievance procedure.

In January 1993, after hearing nothing from Commissioner Kelton, or any other Upton County personnel, Appellee concluded that he was not going to get his job back.[4] Suit was filed on February 19, 1993. Appellee died shortly thereafter. The case proceeded to trial with a jury returning a verdict against Upton County in the amount of $150,000 in compensatory damages and an additional $10,000 in punitive damages for violations of both the Whistleblower Act and the Appellee's First Amendment rights. Upton County now brings this appeal.

3. The same Commissioner Kelton ordered Mr. Strieglar to fire Appellee.

4. Appellee was terminated from employment on November 20, 1992.

## II. DISCUSSION

### A. Statute of Limitations

In Point of Error No. One, Upton County contends that the trial court erred in finding that Appellee's claims are not barred by limitations. We disagree.

#### 1. The Whistleblower Act

Appellee alleges that Upton County violated both the Whistleblower Act[5] and Appellee's First Amendment rights. The pertinent provisions which Appellee relied upon, and which the jury found Upton County violated, are:

Sec. 2. A state or local governmental body may not suspend or terminate the employment of, or otherwise discriminate against, a public employee who reports a violation of law to an appropriate law enforcement authority if the employee report is made in good faith.

Sec. 3. (a) A public employee who alleges a violation of this Act may sue for injunctive relief, damages, or both. Except as provided by Subsection (d) of this section, an employee who seeks relief under this Act must sue not later than the 90th day after the day the alleged violation occurred or was discovered by the employee through the use of reasonable diligence....

(d) Before bringing an action under this section, an employee of a local governmental body must exhaust any applicable grievance or appeal procedures adopted by the employing local governmental body to resolve disputes concerning the suspension or termination of an employee's employment or an allegation of unlawful discrimination. Time used by the employee in following those procedures may not be included in the determination of the running of the limitations period established by Subsection (a) of this section. The employee must invoke the grievance or appeal procedure not later than the 90th day after

5. Tex.Rev.Civ.Stat. Ann. art. 6252–16a, Act of May 30, 1983, 68th Leg.,R.S., ch. 832, 1983 Tex.Gen. Laws 4751, repealed by Act of May 4, 1993, 73rd Leg., R.S., ch. 268, § 46(1), 1993 Tex.Gen.Laws 583, 986, (recodified as Tex.Gov't Code Ann. §§ 554.001–.009 (Vernon 1994)).

the date the alleged violation occurred or was discovered by the employee through the use of reasonable diligence.

(e) If a final decision is not rendered within 30 days of initiation, the provisions of Subsection (d) do not apply.

■ Tex.Rev.Civ.Stat.Ann. art. 6252–16a; *Beiser v. Tomball Hosp. Authority,* 902 S.W.2d 721, 725 (Tex.App.—Houston [1st Dist.] 1995, writ denied). The Act prohibits a local government from terminating an employee for reporting "a violation of law to an appropriate law enforcement authority if the employee report is made in good faith." *City of Houston v. Leach,* 819 S.W.2d 185, 193 (Tex.App.—Houston [14th Dist.] 1991, no writ), *citing Lastor v. City of Hearne,* 810 S.W.2d 742, 743 (Tex.App.—Waco 1991, writ denied); Tex.Rev.Civ.Stat.Ann. art. 6252–16a, § 2. An employee has the burden of proving that he was terminated for reporting a violation of law. *Leach,* 819 S.W.2d at 193; Tex.Rev.Civ.Stat.Ann. art. 6252–16a, § 3(b). The Act gives a public employee, whose employment is terminated under such circumstances, the right to sue for damages and other relief. *Texas Dep't of Human Services v. Hinds,* 904 S.W.2d 629, 631 (Tex.1995); *City of Alamo v. Holton,* 934 S.W.2d 833, 836 (Tex.App.—Corpus Christi 1996, no writ). While the Act does not specifically waive sovereign immunity, it does specifically authorize a suit against a governmental body. *Texas Dept. of Criminal Justice v. Terrell,* 925 S.W.2d 44, 47 (Tex.App.—Tyler 1995, no writ). Courts have found that it is clear from the language of the statute that the Legislature intended to provide a public employee with a cause of action in which he would be entitled to recover damages and other remedies against the State. *Terrell,* 925 S.W.2d at 47; *Knowlton v. Greenwood Indep. Sch. Dist.,* 957 F.2d 1172 (5th Cir. 1992); *Texas Dept. of Human Serv. v. Green,* 855 S.W.2d 136 (Tex.App.—Austin 1993, writ denied).

It has been clearly established that the Whistleblower Act has two legislative purposes:

(1) to protect public employees from retaliation by their employer when, in good faith, employees report a violation of law; and

(2) in consequence, to secure lawful conduct on the part of those who direct and conduct the affairs of public bodies.

*Green,* 855 S.W.2d at 142; *Travis County v. Colunga,* 753 S.W.2d 716, 718–19 (Tex.App.—Austin 1988, writ denied). The Act should be construed liberally and in accordance with its remedial purpose. *Green,* 855 S.W.2d at 142; *Castaneda v. Texas Dept. of Agriculture,* 831 S.W.2d 501, 503 (Tex.App.–Corpus Christi 1992); *see Burch v. City of San Antonio,* 518 S.W.2d 540, 544 (Tex.1975)(remedial statutes shall be given most comprehensive and liberal construction possible); *see also* Tex. Gov't Code Ann. §§ 312.005, et seq. (Vernon 1994); *Braugh v. Corpus Christi Bank & Trust,* 605 S.W.2d 691, 696–97 (Tex.Civ. App.—Corpus Christi 1980, writ ref'd n.r.e.); *see Lastor,* 810 S.W.2d at 744; *but see City of Ingleside v. Kneuper,* 768 S.W.2d 451, 457 (Tex.App.—Austin 1989, writ denied)(construing the punitive damage aspect of the act strictly). "A liberal construction does not restrict the statute, but enlarges its scope and effect to effectuate the true legislative purpose." *Green,* 855 S.W.2d at 142; *Castaneda,* 831 S.W.2d at 503.

■ As noted above, the evidence in the instant case shows that Appellee was terminated on November 20, 1992, and filed suit on February 19, 1993. Both parties concede that suit was filed 91 days after Appellee was terminated. The record further shows that once Appellee was terminated, he contacted Upton County Commissioner Kelton that very evening. Appellee invoked the only procedure to appeal his termination that he was aware of, and apparently, as the record indicates, the only grievance procedure available in Upton County. Commissioner Kelton went to Appellee's home at Appellee's request and agreed to "check into the matter." Pending resolution of the matter by Commissioner Kelton, Appellee waited until January 1993, but never heard from Commissioner Kelton or anyone from Upton County. Finally, suit was filed on February 19, 1993.

Upton County contends that Appellee failed to timely file his suit. We find, pursuant to *Beiser v. Tomball Hosp. Authority,*

902 S.W.2d 721 (Tex.App.—Houston [1st Dist.] 1995, writ denied), that Appellee timely filed his claim. In *Beiser*, the employee waited and filed his lawsuit on day 120. *Id.* at 723. The *Beiser* Court stated:

> We hold under the whistleblower statute, when, as here, it is unclear whether the employer has a post-termination grievance procedure, or it is unclear what the procedure is and when, as here, the terminated employee, on or before the ninetieth day after the termination occurred, notifies the employer that he is invoking that employee's grievance procedure, informing that employer that it has 30 days in which to conclude the grievance procedure, that the terminated employee's claim is not barred by the statute's limitations provisions. See former art. 6252–16a, sections 3(a), (d), (e); see also HOUSE COMM. ON LABOR AND EMPLOYMENT RELATIONS, BILL ANALYSIS, H.B. 1405, 71st Leg., R.S. (1989)("The employee would be required to begin grievance procedures within 90 days after the alleged violation of the act. The grievance procedure and decision could take no longer than 30 days. The time used to follow grievance procedures would not be included in the 90–day deadline for filing a suit against an employer.").

*Id.* at 724–25; *see also Turner v. Richardson Indep. Sch. Dist.*, 885 S.W.2d 553, 560 (Tex. App.—Dallas 1994, writ denied)(suit must be filed within 120 days following the violation).

Having utilized the only grievance procedure which was in place in Upton County, we find, in accordance with *Beiser* and *Turner*, that Appellee timely filed his cause of action.

### 2. First Amendment Speech Retaliation

■ Appellee also complained that his First Amendment rights were violated, as evidenced by his 42 U.S.C. § 1983 claim.[6] The 1983 action was first raised in Appellee's Second Amended Petition, which was not filed until June of 1995, almost three months

after Appellee's death, more than two years after his original lawsuit was filed, and almost three years after his employment was terminated with Upton County. Appellee argues that his claim is not time barred because of the "relation-back" doctrine. Finding that his Whistleblower action was timely filed within the statute of limitations, we find the "relation-back" doctrine applicable and further find that Appellee's 1983 action was also timely filed.

■ Section 1983 imposes liability for violations of rights protected by the United States Constitution, not for violations of duties of care arising under tort law. *Spacek v. Charles*, 928 S.W.2d 88, 92 (Tex.App.—Houston [14th Dist.] 1996, no writ), *citing Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir.1994)(opin. on reh'g), *cert. denied*, 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994), *citing Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979). The obvious threshold inquiry in any Section 1983 claim is whether the plaintiff has been deprived of a right secured by the Constitution. *Charles*, 928 S.W.2d at 92, *citing Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *see Taylor Indep. Sch. Dist.*, 15 F.3d at 450 (stating the first step in deciding whether defendants are entitled to qualified immunity is to determine whether Constitutional rights were violated).

■ The First Amendment protects speech by an employee commenting as a citizen on a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983); *Leach*, 819 S.W.2d at 198. Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. 461 U.S. at 147–48, 103 S.Ct. at 1690–91, 75 L.Ed.2d at 708; *Id.* A section 1983 cause of action is a federal ques-

---

6. Section 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

tion. A federal claim for violation of civil rights is governed by the state statute of limitations statute which is most analogous to the federal claim being raised. *Pete v. Metcalfe,* 8 F.3d 214, 217 (5th Cir.1993); *Ali v. Higgs,* 892 F.2d 438, 439 (5th Cir.1990). The statute of limitations for a Speech Retaliation claim brought pursuant to 42 U.S.C. § 1983 is two years. *Higgs,* 892 F.2d. at 439; *see also Arquette v. Hancock,* 656 S.W.2d 627 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). Both parties agree that the two-year statute of limitations applies. Appellee relies on the "relation-back" doctrine in order to prevent his First Amendment speech retaliation claim from being time barred.

The "relation-back" doctrine, as found in the Civil Practice and Remedies Code, at Section 16.068, which states:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

TEX.CIV.PRAC. & REM.CODE ANN. § 16.068 (Vernon 1986).

Insofar as Appellee's Speech Retaliation claim arises from the identical acts which constitute his Whistleblower action, we find that his Second Amended Petition is not based on a new, distinct, or different transaction or occurrence. Consequently, we find that Appellee's Speech Retaliation was filed within the statute of limitations. Accordingly, we overrule Point of Error No. One in its entirety.

### B. Upton County's Survival Claims

In Point of Error No. Two, Upton County asserts that the trial court erred in ruling that Appellee's claims survived his death.

As noted above, Appellee died of terminal cancer shortly after initially filing his Whistleblower cause of action. His First Amendment Speech Retaliation cause of action was added after a suggestion of death was filed by his wife, Nonita Brown, who has prosecuted this case in his name since that time. The trial court ruled that Appellee's claim for violation of the Whistleblower Act and his Speech Retaliation claim survived his death.

### 1. Survival Statute

At common law, a claim for personal injuries expired upon the claimant's death, and the decedent's survivors had no claim against a party who may have negligently caused the decedent's death. *Westphal v. Diaz,* 918 S.W.2d 543, 546 (Tex.App.—Corpus Christi 1996, no writ), *citing Rose v. Doctors Hosp.,* 801 S.W.2d 841, 845 (Tex.1990). However, the Texas Legislature has abrogated both of these common-law rules. *Diaz,* 918 S.W.2d at 546; TEX.CIV.PRAC. & REM.CODE ANN. §§ 71.002 (allowing claim for wrongful death), 71.021 (allowing survival of decedent's causes of action)(Vernon 1986). A statutory survival action allows the decedent's heirs, legal representatives, and estate to sue for injuries that the decedent personally suffered. *Diaz,* 918 S.W.2d at 546; TEX.CIV. PRAC. & REM.CODE ANN. § 71.021. The Survival Statute was enacted in 1895 and although it does not create a new cause of action, it provides that "[a] cause of action for personal injury to the health, reputation, or person of an injured person" survives the death of the injured party "to and in favor of the heirs, legal representatives, and estate of the injured person." Act of May 4, 1895, 24th Leg., R.S., ch. 89, § 1, 1895 Tex.Gen.Laws 143 (current version at TEX.CIV.PRAC. & REM. CODE ANN. § 71.021); *State Farm Fire and Cas. Co. v. Gandy,* 925 S.W.2d 696, 707 (Tex. 1996). *Parrott v. Caskey,* 873 S.W.2d 142, 150 (Tex.App.—Beaumont 1994, no writ).

The Texas Survival Statute has been codified in the Civil Practice and Remedies Code and provides:

> (a) A cause of action for personal injury to the health, reputation, or person of an injured person does not abate because of the death of the injured person or because of the death of a person liable for the injury.
>
> (b) A personal injury action survives to and in favor of the heirs, legal representa-

tives, and estate of the injured person. The action survives against the liable person and the person's legal representatives. (c) The suit may be instituted and prosecuted as if the liable person were alive. TEX.CIV.PRAC. & REM.CODE ANN. § 71.021 (Vernon 1986); *Harris County Hosp. Dist. v. Estrada,* 872 S.W.2d 759, 770 (Tex.App.— Houston [1st Dist.] 1993, writ denied). The Texas Supreme Court, in *Russell v. Ingersoll–Rand Co.,* described the survival action as follows:

> By this statute, a decedent's action survives his death and may be prosecuted in his behalf. The survival action, as it is sometimes called, is wholly derivative of the decedent's rights. The actionable wrong is that which the decedent suffered before his death. The damages recoverable are those which he himself sustained while he was alive and not any damages claimed independently by the survival action plaintiffs (except that funeral expenses may also be recovered if they were not awarded in a wrongful death action). Any recovery obtained flows to those who would have recovered it had he obtained it immediately prior to his death—that is, his heirs, legal representatives and estate.

*Estrada,* 872 S.W.2d at 768, *citing Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 345 (Tex.1992).

■ In determining whether a survival action is viable, if the decedent's action would not have been barred at death, the running of the limitations period for a survival action is tolled by the decedent's death for up to one year. *Felan v. Ramos,* 857 S.W.2d 113, 118 (Tex.App.—Corpus Christi 1993, writ denied), *citing* TEX.CIV.PRAC. & REM.CODE ANN. § 16.062 (Vernon 1986). Conversely, if a decedent's action would have been barred by limitations had it been asserted immediately prior to death, a survival action based upon the same alleged wrong is likewise barred. *Id.* Defenses that could have been raised against a claim by the injured person if alive may be raised against the same claim asserted by the heirs or estate in the survival action. *Id., citing Castleberry v. Goolsby Bldg. Corp.,* 617 S.W.2d 665 (Tex.1981). Accordingly, when a decedent would be barred

by limitations from asserting a cause of action at the time of his death, the beneficiaries under the wrongful death and survival statutes likewise are precluded from asserting derivative causes of action. *Russell,* 841 S.W.2d at 345; *Martinez v. Flores,* 865 S.W.2d 194, 197 (Tex.App.–Corpus Christi 1993); *Davenport v. Phillip Morris, Inc.,* 761 S.W.2d 70, 72 (Tex.App.–Hous [14 Dist.]).

### 2. The Whistleblower Act

■ We must determine whether the Texas Survivability Statute applies to the Whistleblower Act. In making that determination, we find no reported cases reflecting on that precise issue.

The Whistleblower Act does not itself provide for survival of a cause of action, but by virtue of the Texas Survival Statute, personal injury actions in Texas survive a decedent's death and may be prosecuted on the decedent's behalf. TEX.CIV.PRAC. & REM.CODE ANN. § 71.021 (Vernon 1986); *see also Russell,* 841 S.W.2d at 345.

The Whistleblower Act is a codification of the public employment area of the common law cause of action for retaliatory discharge. *See Texas Dept. of Human Services v. Hinds,* 904 S.W.2d 629, 633–34 (Tex.1995)(Whistleblower Act permits a cause of action for retaliatory discharge). Retaliatory discharge has long been recognized as an action sounding in tort. *See Almazan v. United Servs. Auto. Ass'n, Inc.,* 840 S.W.2d 776, 780 (Tex.App.—San Antonio 1992, writ denied)(wrongful discharge generally sounds in tort); *Russell v. Edgewood Indep. Sch. Dist.,* 406 S.W.2d 249, 250–51 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.)(action for wrongful termination because of union membership was action sounding in tort). Finding that a whistleblower claim is analogous to a personal injury tort, and such personal injury causes of action do not abate because of the death of the injured person, we find that Appellee's Whistleblower action falls within the ambit of the Texas Survival Statute.

We are further persuaded by other court's holdings that even statutory causes of action are held to survive the death of a claimant.

*Snyder v. Whittaker Corp.*, 839 F.2d 1085, 1092 (5th Cir.1988)(Death on the High Seas Act claim allows recovery of pain and suffering damages under state's survival statute); *Thomes v. Porter*, 761 S.W.2d 592, 593–94 (Tex.App.—Fort Worth 1988, no writ) (DTPA claims for other than personal injuries, including statutory damages thereunder, held to survive consumer's death); *Traver v. State Farm Mut. Auto. Ins. Co.*, 930 S.W.2d 862, 872 (Tex.App.—Fort Worth 1996, no writ)(based upon the holding in *Thomes v. Porter*, the court found that appellant's DTPA and Article 21.21 causes of action that can be supported by the legal malpractice action survived Davidson's death because they affect property rights of the estate); *Townsend v. Catalina Ambulance Co., Inc.*, 857 S.W.2d 791 (Tex.App.—Corpus Christi 1993, no writ)(survivors of patient who died during transportation to hospital by ambulance company filed action under wrongful death and survival statute and Texas Deceptive Trade Practice–Consumer Protection Act against ambulance company; court allowed additional damages recoverable under the DTPA to be awarded to the survivors); *Castleberry*, 617 S.W.2d at 666 (the court held that the Workers' Compensation Act does not bar a deceased's cause of action for intentional injuries which survive to the estate under Article 5525—Texas Survival Act now codified TEX.CIV.PRAC. & REM. CODE ANN. § 71.021 (Vernon 1986)); *Hofer v. Lavender*, 679 S.W.2d 470, 472 (Tex.1984)(after citing the Survival Statute, art. 5525, the court found that it is now accepted that death of the injured party does not bar a recovery of exemplary damages by the estate. The Court cited: *Castleberry*, 617 S.W.2d at 665; *Folsom Investments, Inc. v. Troutz*, 632 S.W.2d 872 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.); *Pace v. McEwen*, 574 S.W.2d 792 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.); *Houston–American Life Ins. Co. v. Tate*, 358 S.W.2d 645 (Tex.Civ.App.—Waco 1962, no writ)).

■ The Whistleblower Act has a remedial purpose in that it is designed to enhance openness in government and compel government's compliance with the law of protecting those who inform authorities of wrongdoing. *Davis v. Ector County, Texas*, 40 F.3d 777,

785 (5th Cir.1994); *Green*, 855 S.W.2d at 142; *Castaneda v. Texas Dep't of Agric.*, 831 S.W.2d 501, 503 (Tex.App.—Corpus Christi 1992, writ denied). In liberally construing the purpose of the Act, it is apparent to this Court that a cause of action under the Act should survive the death of the claimant. *See Porter*, 761 S.W.2d at 594. To hold otherwise would be to ignore the intent of the Legislature in enacting the Whistleblower Act and to allow violators to escape the legislative intent simply because their victims suffered the tragedy of death prior to initiating suit. *Id.* Given the above, we find Appellee's cause of action brought pursuant to the Texas Whistleblower Act to survive his death.

### 3. First Amendment Speech Retaliation

■ Appellee's First Amendment speech retaliation claim is based upon 42 U.S.C. § 1983. Section 1983, like the Texas Whistleblower Act, does not address whether a claim under that section survives or whether it permanently abates upon the death of the claimant. We look to other courts in examining whether the Texas Survival Act applies to Section 1983 claims.

Texas does not have a survival statute tailored to cover the civil rights guaranteed under Texas law, and no reported Texas case has examined the survival of civil rights under Texas law. *Hamilton v. Rogers*, 573 F.Supp. 452, 453–54 (S.D.Tex.1983). The *Hamilton* court likewise found that a comprehensive federal statute covering survival of actions arising under federal law does not exist. *Id.* at 453. While a survivorship provision was included in the ultimate enactment of 42 U.S.C. § 1986, but it applies only to claims rising under § 1985. As to a claimant's actions under Sections 1981, 1983, 1988 and 2000e, Section 1988 governs. *Id.* This statute recognizes that in certain areas, the federal civil rights laws are "deficient in the provisions necessary to furnish suitable remedies," and in such instances federal courts are directed to adopt state law insofar as it is not inconsistent with federal law. *Id., citing* 42 U.S.C. § 1988 (1976); *Robertson v. Wegmann*, 436 U.S. 584, 589–91, 98 S.Ct. 1991, 1994–95, 56 L.Ed.2d 554 (1978); *Brazier v.*

*Cherry*, 293 F.2d 401, 405–06 (5th Cir.), *cert. denied*, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961); *Pritchard v. Smith*, 289 F.2d 153, 157–58 (8th Cir.1961). In applying those standards and the legislative guidance given it, the *Hamilton* court examined the Texas survival statute. It found that when construing the breadth of the Texas survival statute in *Vassallo v. Nederl–Amerik Stoomv Maats Holland*, 162 Tex. 52, 344 S.W.2d 421, 426 (1961), the Texas Supreme Court held that:

> [W]e do not ... interpret the statute to provide for the survival of only those causes of action which existed in 1925. The purpose of the statute undoubtedly is that any cause of action, whenever arising and regardless of what law it arises under, shall not be abated by death. It was never meant to freeze the statute as of 1925, thereby rendering it necessary for the legislature to constantly adopt amendments to cover new rights as they are recognized by statute or court decision.

*Hamilton*, 573 F.Supp. at 454. The *Hamilton* Court found that the Texas survival statute was broad enough to encompass claims under §§ 1981, 1983, 1988, and 2000e and that these claims survive death. *Id.*

We note that in § 1983 cases, the necessity of looking beyond the statute for such rules recurs because that section does little more than create a cause of action. *Id.* Congress meant for the statute to serve only that general function, however, and it indicated that intention by enacting 42 U.S.C. § 1988 (1982). *Id.* That statute purports to govern the choice of law in all cases involving claims under the Reconstruction Civil Rights Acts. *Id.* But when resolving questions of inconsistency between state and federal law raised under Section 1988, courts must look not only at particular federal statutes and constitutional provisions, but also at the policies expressed in them. *Clift v. Fincannon*, 657 F.Supp. 1535, 1541 (E.D.Tex.1987), *citing Robertson*, 436 U.S. at 584, 98 S.Ct. at 1995, 56 L.Ed.2d at 554 (*quoting Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 239–41, 90 S.Ct. 400, 406, 24 L.Ed.2d 386 (1969)). The policies underlying Section 1983 clearly include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law. *Id.*; *see, e.g., Monroe v. Pape*, 365 U.S. 167, 171–88, 81 S.Ct. 473, 476–484, 5 L.Ed.2d 492 (1961). The *Clift* court found that none of the policies behind Section 1983 is subverted by the adoption of the State of Texas survival law. *Id.* Because of the compensatory purposes of a Section 1983 claim, it was held that such claims should survive the death of the aggrieved:

> It defies history to conclude that Congress purposely meant to assure to the living freedom from such unconstitutional deprivations, but that ... it meant to withdraw the protection of civil rights statutes against the peril of death.

*Id., citing Brazier v. Cherry*, 293 F.2d 401, 404 (5th Cir.1961).

We are persuaded by the court's analysis in *Hamilton, Delesma v. City of Dallas*, 770 F.2d 1334 (5th Cir.1985), and *Clift* and hold that Appellee's first amendment speech retaliation claim does survive his death under the current law.

Having found that Appellee's Whistleblower and First Amendment Speech Retaliation claim survive the death of Appellee, we overrule Point of Error No. Two in its entirety.

### C. Failure to Present Claims to Commissioner's Court

In Point of Error No. Three, Upton County complains that the trial court erred in ruling that Appellee's claims were not barred due to Appellee's failure to present the claims to the commissioner's court prior to filing suit.

#### 1. The Whistleblower Claim

The commissioner's court of each Texas county is the governing body of the county, with general control over the county's business conducted as a subdivision of the State. *Colunga*, 753 S.W.2d at 719–20; Tex. Const.Ann. art. V, § 18(b). The commissioner's court has no general police power, such as that possessed by the State and by the many municipalities under the law. *Id.* It does have, however, those powers expressly conferred upon it by the Constitution and by the Legislature, together with such

implied powers as are necessary to exercise the powers expressly conferred. *Id., citing Canales v. Laughlin,* 147 Tex. 169, 214 S.W.2d 451 (1948); *Clark v. Finley,* 93 Tex. 171, 54 S.W. 343 (1899). In that connection, the Legislature has conferred upon a county commissioner's court the express power of eminent domain to acquire land for use as a public park, with the implied powers of establishing and maintaining such a park, and the express power to hire, supervise, discipline, and even discharge the county employees who carry out maintenance work in the park. *Colunga,* 753 S.W.2d at 719–20; *see e.g.,* TEX.LOCAL GOV'T CODE ANN. §§ 151.001–151.903 (Vernon 1988); *Id.* at §§ 261.001–261.003. Implicit in these express powers is the power to inquire into the lawfulness of employee conduct in performing their assigned work and the power to prevent their unlawful conduct, just as any employer has the power to control his employee's work. *Colunga,* 753 S.W.2d at 719–20. These powers exist in a county commissioner's court whatever may be the powers of other officials to punish illegal employee conduct through civil or criminal proceedings. *Id.*

Section 81.041, entitled Presentation of Claims, provides:

> (a) A person may not sue on a claim against a county unless the person has presented the claim to the commissioners court and the commissioners court has neglected or refused to pay all or part of the claim.

TEX.LOC.GOV'T CODE ANN. § 81.041 (Vernon 1988). Upton County contends that Appellee's claims are barred due to his failure to present his claims to the commissioner's court. We are in agreement with the Texas Third Court of Appeals' decision in *Gregg County v. Farrar,* that Section 81.041 does not apply to actions brought under the Whistleblower Act.

In *Farrar,* the Third Court held that Section 81.041 simply does not govern suits against counties under the Whistleblower Act. *Gregg County v. Farrar,* 933 S.W.2d 769, 772–73 (Tex.App.—Austin 1996, no writ). The court began its analysis by relying on a line of cases that hold the presentment requirement of Section 81.041 does not apply to claims under Texas Tort Claims Act. *Id. citing Harris County v. Dillard,* 841 S.W.2d 552, 557 (Tex.App.—Houston [1st Dist.] 1992), *rev'd on other grounds,* 883 S.W.2d 166 (Tex.1994); *Rosales v. Brazoria County,* 764 S.W.2d 342 (Tex.App.—Texarkana 1989, no writ); *Harris County v. Dowlearn,* 489 S.W.2d 140, 146 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.). The *Farrar* court found that the courts in those cases concluded that the notice provision of the Texas Tort Claims Act constituted the exclusive notice requirement for bringing suit under that statute.[7] *Id., citing Dowlearn,* 489 S.W.2d at 146. Both the Texas Tort Claims Act and the Whistleblower Act creates a cause of action under which a public entity may be sued. *Id., citing Colunga,* 753 S.W.2d at 718. The main purpose of Section 81.041(a) is "to advise the commissioner's court of [a] claim and afford it an opportunity to investigate and adjust it without litigation." *Id. citing Bowles v. Wade,* 913 S.W.2d 644, 650 (Tex.App.—Dallas 1995, writ denied). As the *Farrar* court noted, the Whistleblower Act does not contain a notice provision, but the statute does provide that before suit is brought, an employee must exhaust any applicable grievance or appeal procedures adopted by the employing local governmental body to resolve disputes concerning the suspension or termination of an employee's employment or an allegation of unlawful discrimination. *Id. citing* TEX. REV.CIV.STAT. ANN. art. 6252—16a, § 3(d). The *Farrar* court concluded, "The exhaustion requirement of the Whistleblower Act thus apprises the governmental entity of a claim against it and serves the same purpose as the notice requirement of Section 81.041." *Id.* We find the Austin court's analysis to be highly persuasive.

Appellee exhausted all known grievance and appeal procedures provided by Upton County. Unlike *Farrar,* where Gregg County's employment manual specifically laid out a three-step appeals process which required an appeal to the commissioner's court, Upton

---

7. The Texas Tort Claims Act has its own specific notice provision, therefore, the general provision found in the Local Government Code does not apply to claims brought under that Act.

County admitted that it was unknown which employment manual governed Appellee and that there was no formal grievance procedure available. We find, in accordance with *Farrar*, that Appellee was not required to appeal his cause of action to the commissioner's court and that he exhausted all procedures available provided by Upton County.

### 2. First Amendment Speech Retaliation Claim

■ Upton County contends that Appellee's speech retaliation claim did not present this federal violation to the commissioner's court and therefore could not bring suit against Upton County in the trial court below.

This Court has previously discussed the issue of presentment in *Carrillo v. Anthony Indep. Sch. Dist.*, 921 S.W.2d 800 (Tex. App.—El Paso 1996, no writ). There a school teacher sued the school district, its Board of Trustees, and superintendent alleging that she was wrongfully terminated. Carrillo asserted both a federal and state constitutional due process claim and a claim pursuant to 42 U.S.C. § 1983. We began that opinion by stating, "As a general rule, a teacher complaining of wrongful discharge must exhaust all available administrative remedies if the subject matter involves questions of fact." *Carrillo*, 921 S.W.2d at 804, *citing Barrientos v. Ysleta Indep. Sch. Dist.*, 881 S.W.2d 159, 160–61 (Tex.App.—El Paso 1994, no writ); *Roberts v. Hartley Indep. Sch. Dist.*, 877 S.W.2d 506, 507 (Tex.App.—Amarillo 1994, writ denied); *Mitchison v. Houston Indep. Sch. Dist.*, 803 S.W.2d 769, 771–72 (Tex.App.—Houston [14th Dist.] 1991, writ denied). An exception to this general rule exists when a plaintiff asserts federal law claims, and recourse may be sought in a court of law. *Carrillo*, 921 S.W.2d at 804, *citing Mitchison*, 803 S.W.2d at 773. In the instant case, we have found that exhaustion of administrative remedies was not a prerequisite to seeking relief in a court of law concerning a Section 1983 claim. *See Carrillo*, 921 S.W.2d at 804, *citing Patsy v. Board of Regents*, 457 U.S. 496, 500–01, 102 S.Ct. 2557, 2560, 73 L.Ed.2d 172, 177–78 (1982)(stating categorically that exhaustion of

administrative remedies, whether federal or state, is not a prerequisite to an action under Section 1983). The United States Supreme Court in *Patsy* added:

> Respondent suggests that our prior precedents do not control our decision today, arguing that these cases can be distinguished on their facts or that this Court did not 'fully' consider the question whether exhaustion should be required. This contention need not detain us long. Beginning with *McNeese v. Board of Education*, 373 U.S. 668, 671–673, 83 S.Ct. 1433, 1435–1436, 10 L.Ed.2d 622 (1963), we have on numerous occasions rejected the argument that a § 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies. *See Barry v. Barchi*, 443 U.S. 55, 63, n. 10, 99 S.Ct. 2642, 2648, n. 10, 61 L.Ed.2d 365 (1979); *Gibson v. Berryhill*, 411 U.S. 564, 574, 93 S.Ct. 1689, 1695, 36 L.Ed.2d 488 (1973); *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972); *Wilwording v. Swenson*, 404 U.S. 249, 251, 92 S.Ct. 407, 409, 30 L.Ed.2d 418 (1971); *Houghton v. Shafer*, 392 U.S. 639, 640, 88 S.Ct. 2119, 2120, 20 L.Ed.2d 1319 (1968); *King v. Smith*, 392 U.S. 309, 312, n. 4, 88 S.Ct. 2128, 2130, n. 4, 20 L.Ed.2d 1118 (1968); *Damico v. California*, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967). *Cf. Steffel v. Thompson*, 415 U.S. 452, 472–473, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974).... [W]e have not deviated from that position in the 19 years since *McNeese*. Therefore, we do not address the question presented in this case as one of first impression.

*Patsy*, 457 U.S. at 500–01, 102 S.Ct. at 2559–60, 73 L.Ed.2d at 177–78. From an examination of the above compelling authorities, we find that Section 81.041 of the Texas Local Government Code to be inapplicable to claims brought pursuant to 42.U.S.C. § 1983, and further find that Appellee was not required to present his First Amendment speech retaliation claim to the commissioner's court in Upton County. Accordingly, Appellant's Point of Error No. Three is overruled in its entirety.

## D. Sufficiency of the Evidence to Support Violations

In Points of Error Nos. Four and Five, Appellant maintains that the evidence is insufficient to establish a violation of the Texas Whistleblower Act and Appellee's First Amendment Rights.

We note at the outset that Appellant wholly fails to state whether this Court should conduct a legal or factual analysis regarding its Points of Error Nos. Four and Five. Its prayer for relief however, requests that the judgment be reversed and that this Court render judgment in its favor. Under normal circumstances, a judgment is reversed and rendered for a party on legal sufficiency analysis. Consequently, we conduct a legal sufficiency review.

In considering a "no evidence" legal insufficiency point, we consider only the evidence that tends to support the jury's findings and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Texas Tech Univ. Health Sciences Ctr. v. Apodaca*, 876 S.W.2d 402 (Tex.App.—El Paso 1994, writ denied). If there is more than a scintilla of evidence to support the questioned finding, the "no evidence" point fails. *Tseo v. Midland Am. Bank*, 893 S.W.2d 23, 25 (Tex.App.—El Paso 1994, writ denied); *Hallmark v. Hand*, 885 S.W.2d 471, 474 (Tex.App.—El Paso 1994, writ denied).

### 1. The Whistleblower Act

Appellant contends in Point of Error No. Four that first, Appellee failed to make a report to an appropriate authority, as required by statute; and second, that there is no nexus between any report made by Appellee and his termination.

#### a. Necessity of Report to Appropriate Authority

Appellant argues that Appellee failed to make a report to an appropriate authority but rather made his report to Texas Department of Public Safety Officer Havins. Appellant, on appeal, wholly fails to acknowledge evidence that Appellee reported violations of the law to the Upton County Judge, the local municipal judge, as well as two of the four Upton County Commissioners.

Article 6252–16a, § 2 prohibits the following acts by counties and other local governmental bodies:

A [county] may not suspend or terminate the employment of, or otherwise discriminate against, a public employee who reports a violation of law **to an appropriate law enforcement authority** if the employee report is made in good faith. [Emphasis added].

TEX. REV.CIV.STAT.ANN. art. 6252—16a, § 2. *Colunga*, 753 S.W.2d at 718. Section 3 of the statute authorizes a public employee to sue the governmental body for injunctive relief or damages, or both, for "a violation of this Act...." *Colunga*, 753 S.W.2d at 718. Section 4 specifies the damages recoverable as actual damages, exemplary damages, costs of court, and reasonable attorney's fees; "and, in evident reference to the permitted 'injunctive relief,' the section authorizes the employee to recover reinstatement to his former position, compensation for wages lost during the period of suspension or termination, and reinstatement of lost 'fringe benefits' and 'seniority rights.'" *Id.* The following section, § 5 of the statute, authorizes the attorney general or an "appropriate prosecuting attorney" to recover a civil penalty, in a sum not to exceed $1,000, from the "supervisor who suspends or terminates the employment of a public employee for reporting a violation of law" under the statute. *Id.*

Our analysis then turns to the proper meaning to be assigned the statutory expression "an appropriate law enforcement authority," as that term is used in Article 6252–16a. *Colunga*, 753 S.W.2d at 718. This Court must find the meaning from a general view of the statute as a whole, assuming that our Legislature intended a meaning that would effectuate the purposes that underlie Article 6252–16a. *Colunga*, 753 S.W.2d at 718; *citing Citizens Bank of Bryan v. First State Bank, Hearne*, 580 S.W.2d 344 (Tex.1979).

We note several decisions which have discussed and defined the term "an appropriate law enforcement authority." In *City of Dallas v. Moreau*, 697 S.W.2d 472 (Tex.App.—Dallas 1985, no writ), the court wrote:

We hold that, in order to be 'appropriate,' the authority to whom the report is given must have the power and the duty under the law to decide disputes concerning the lawfulness of the matter being reported, the power to legislate or regulate with respect thereto, or the power to arrest, prosecute or otherwise discipline on account of an alleged violation being reported.

*Id.* at 474. In *Colunga* the court defined this term slightly differently:

We hold that 'an appropriate law enforcement authority,' includes at minimum any public authority having the power and duty of inquiring into the lawfulness of the questioned conduct and causing its cessation if the conduct appears to be a violation of the law.

*Id.,* 753 S.W.2d at 719–720; [8] *see also Leach,* 819 S.W.2d at 197–98. While the court in *Castaneda v. Texas Dept. of Agric.,* 831 S.W.2d 501 (Tex.App.—Corpus Christi 1992, writ denied) stated after an analysis of the above decisions:

After careful consideration, we have synthesized these and other principles, and define "appropriate law enforcement authority" as any entity with the capacity through legal processes or otherwise to take remedial action with respect to the alleged violation. We recognize that this definition includes regulatory agencies, authorities within the public servant's agency, and others who are not "law enforcement authorities" in the traditional sense. However, this interpretation is necessary to realize this statute's remedial purpose: to foster governmental compliance with the law.

*Id.* at 504. After examining the definitions above, we find that Appellee did in fact make a report [9] with "an appropriate law enforcement authority" as defined by case law when he reported the violations to the Upton County Judge, the local municipal judge, two of the four Upton County Commissioners, his immediate supervisor, as well as a uniformed officer of the Texas Department of Public Safety. We now turn to the question of whether there exists a nexus between those reports, and Appellee's subsequent termination.

### b. Nexus Between Reports and Termination

■ In Point of Error No. Four, Appellant additionally complains that there does

---

**8.** The court also stated, "In view of the great number and variety of public officers and bodies having the power and duty to enforce the civil and penal sanctions in the Texas Agriculture Code, we believe it obvious that the Legislature intended that the word 'appropriate,' as used in art. 6252–16a, § 2, should be sufficiently elastic in its meaning to accommodate all such authorities as well as any other civil authorities having powers and duties sufficient to compel obedience to what the law requires in the particular case." *Colunga,* 753 S.W.2d at 719–20.

The *Colunga* court went on to say:
We therefore disagree with the theory that art. 6252–16a, § 2 allows for only one 'appropriate' authority in any particular report of a violation of law. The very word 'an,' as actually used in the statutory expression, contemplates in ordinary usage that there may be more than one such 'appropriate' authority. *See Doherty v. King,* 183 S.W.2d 1004, 1007 (Tex.Civ.App.1944, writ dism'd)('any' and 'an' are synonymous in meaning more than one or many, including an indefinite number); *Hime v. City of Galveston,* 268 S.W.2d 543, 545 (Tex. Civ.App.1954, writ ref'd n.r.e.)('any' is equivalent to 'every' and 'all'). More importantly we believe it highly doubtful that the Legislature

intended a public employee to bear the risk of guessing erroneously as to the sometimes complex statutory powers committed to a particular public authority, as would be the case under the County's theory that the word 'appropriate' means the exactly correct 'law enforcement authority.' Such an interpretation would frustrate rather than serve the statutory purposes; it is, moreover, contradicted by the 'good faith' limitation placed by the Legislature itself on the protection afforded by art. 6252–16a: so long as the public employee acts in 'good faith,' he is protected by the statute. This express limitation precludes any further narrowing of the statute's protection such as that implied in the exceedingly narrow meaning the County would assign to the word 'appropriate.'

**9.** In interpreting the phrase "reports a violation of the law," the court in *Castaneda* interpreted this phrase to include any disclosure of information regarding a public servant's employer tending to directly or circumstantially prove the substance of a violation of criminal or civil law, the State or Federal Constitution, statutes, administrative rules or regulations. *Castaneda v. Texas Dept. of Agric.,* 831 S.W.2d 501, 504 (Tex.App.— Corpus Christi 1992, writ denied).

not exist a "nexus" between any of the reports Appellee made and his subsequent termination.

In order to prevail under the Whistleblower Act, the discharged employee must show that he or she was discriminated against for reporting a violation of the law. In that regard, the employee must demonstrate that there exists a causal link between the reporting and the ultimate termination. *See City of Dallas v. Moreau,* 697 S.W.2d 472, 474 (Tex.App.—Dallas 1985, no writ); *Garza v. City of Mission,* 684 S.W.2d 148, 151–52 (Tex.App.—Corpus Christi 1984, writ dism'd).

Under the Act, an employee has the burden of proving that the termination was premised on the reporting of a violation of law. TEX.REV.CIV.STAT.ANN. art. 6252–16a, § 3(b); *Leach,* 819 S.W.2d at 193. The Act provides the aggrieved employee with a presumption of retaliation if the termination occurs "not later than the 90th day after making a report." *Leach,* 819 S.W.2d at 193; *citing City of Dallas v. Moreau,* 697 S.W.2d 472, 476 (Tex.App.—Dallas 1985, no writ); *Green,* 855 S.W.2d at 146 [10]; TEX.REV.CIV. STAT.ANN. art. 6252–16a § 3(b). This presumption however is rebuttable. *Texas Dept. of Human Services of State of Tex. v. Hinds,* 904 S.W.2d 629, 637 (Tex.1995).[11]

Commencing with the presumption of retaliation, we find there was sufficient evidence for the jury to conclude that Upton County violated the Whistleblower Act. As noted above, the record clearly shows that Appellee made reports to both a D.P.S. Officer, and the local municipal judge in Septem-

ber 1992. After these reports, Appellee's employment with Upton County was terminated on November 20, 1992. At trial it was estimated that approximately 60 days after the last report was made about the alleged illegal activities, Appellee was terminated.

In addition to the above presumption and established evidence, Appellee further presented evidence to the jury to show his termination was a result of "blowing the whistle".[12] After he made his report to the municipal judge, he was then sent out by himself to do jobs that under normal circumstances require two or three people to perform. Additionally, he produced evidence that upon reporting the loss of some 500 gallons of gasoline to Commissioner Kluthe, that Commissioner Kluthe instructed him to "keep his mouth shut and mind his own business." Evidence was likewise produced to establish that Appellee reported the missing gasoline to his supervisor, Strieglar as well as to Commissioner Kelton. It was after those reports that Commissioner Kelton ordered Strieglar to fire Appellee, which was done within a month after the commissioner's order. Moreover, when asked if Commissioner Kluthe was present when Commissioner Kelton told him to fire Appellee, Strieglar testified, "Probably. I can't really remember." Strieglar also stated that right after he fired Appellee, he met both Commissioner Kelton and Kluthe in a cafe and admitted that he did not know why Commissioner Kelton wanted Appellee fired.

The record in the instant case shows that Upton County operates under a termination

---

10. The Whistleblower Act prohibits a state agency from terminating an employee for reporting "a violation of law to an appropriate law enforcement authority if the employee report is made in good faith." Section 2. An employee has the burden of proving that he was terminated in retaliation for his whistleblowing activities. Section 3(b). The Act affords a presumption of retaliation to an employee who is terminated within ninety days of reporting illegal activities. *Id.*

11. In *Hinds,* the Court stated, "In this case, however, Hinds resigned more than ninety days after he first questioned TDHS' file review policies and the presumption does not apply." 904 S.W.2d at 637

12. The Austin Court of Appeals has found that "Whistleblowing" has been defined as "the act of a man or woman who, believing that the public interest overrides the interest of the organization he serves, publicly 'blows the whistle' if the organization is involved in corrupt, illegal, fraudulent, or harmful activity." *Texas Dept. of Human Services v. Green,* 855 S.W.2d 136, 146 n. 9 (Tex.App.—Austin 1993, writ denied); *citing Winters v. Houston Chronicle Publishing Co.,* 795 S.W.2d 723, 727 (Tex.1990)(Doggett, J., concurring)(citing Whistleblowing: The Report of the Conference on Professional Responsibility vii (R. Nader, P. Petkas & K. Blackwell eds.1972)).

policy that has a graduated disciplinary system. Normally, for a first level offense, a written reprimand is made, then the next level is suspension, and ultimately, as a last resort, termination of employment. As noted, Appellee was given four reasons for his termination, however, Strieglar stated that he never talked to Appellee to give him a chance to improve any of his conduct which presumably led to his termination. He never gave Appellee a written reprimand and told him that this was his warning and that if he violated a policy again, that he would be terminated. In fact, one reason given for Appellee's termination was that he was being rough on equipment, yet Mr. Strieglar admitted that he would never fire anyone for being rough on equipment but only give them an oral reprimand, and stated that to the best of his knowledge, Commissioner Kelton had never fired anybody for being rough on equipment either.[13] Nonetheless, in spite of all of the formal and informal policies presented to the jury, one of the reasons Appellee was allegedly terminated was because he was being "rough" on equipment.

We find additional evidence to show a retaliatory animus toward Appellee by Commissioners Kelton and Kluthe. Once Appellee determined he was fired, he filed for unemployment benefits. Commissioner Kelton testified that it was Upton County's policy to fight all claims for unemployment benefits even if an employee is eligible and entitled to those benefits. When asked whose decision it was to fight Appellee's unemployment benefits, the Upton County Auditor, testified, "I don't know if they conspired with it and they both wanted to do it or, you know, whatever."

We have considered only the evidence that tends to support the jury's findings and have disregarded all evidence and inferences to the contrary. We further find that there is more than a scintilla of evidence to support the questioned finding that Upton County violated the Whistleblower Act. Accordingly, Point of Error No. Four is overruled in its entirety.

13. The record also reveals that other operators had burned up engines on equipment and they

## 2. First Amendment Speech Retaliation Claim

In Point of Error No. Five, Upton County contends that the evidence is insufficient to establish that Upton County violated Appellee's First Amendment rights. Upton County advances its argument in two phases, first, that there was no protected conduct; and, second, that there was no nexus between the report and the termination.

### a. Protected Conduct

 A public employee claiming violation of freedom of speech must show that the speech is entitled to judicial protection under the First Amendment. *Coughlin v. Lee*, 946 F.2d 1152, 1157 (5th Cir.1991). As stated above, the first amendment protects speech by an employee commenting as a citizen on a matter of public concern. *Leach*, 819 S.W.2d at 198; *citing Connick*, 461 U.S. at 138, 147, 103 S.Ct. at 1684, 1690, 75 L.Ed.2d at 708. Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. *Id.*; 461 U.S. at 147–48, 103 S.Ct. at 1690–91. After examining the entire record in the instant case, we find that Appellee's reports addressed a matter of public concern.

 Upton County argues that Appellee did not make a report to an appropriate authority and thereby lost his First Amendment protection. We find no such requirement contained in 42 U.S.C. § 1983. To the contrary, the employee merely must show that the speech was made on a matter of public concern.

We note that the First Amendment does not create property or tenure rights, and does not guarantee absolute freedom of speech. *Board of County Commissioners, Wabaunsee County, Kansas v. Umbehr*, 518 U.S. ——, ——, 116 S.Ct. 2342, 2347, 135 L.Ed.2d 843, 852. The First Amendment's guarantee of freedom of speech protects government employees from termination be-

were neither written up, nor fired for it.

cause of their speech on matters of public concern. *Umbehr,* 518 U.S. at ——, 116 S.Ct. at 2347, 135 L.Ed.2d at 852, *citing Connick,* 461 U.S. at 146, 103 S.Ct. at 1689, 75 L.Ed.2d at 708 (speech on merely private employment matters is unprotected). In order to prevail under a first amendment speech retaliation claim, an employee must meet two elements. He must: (1) prove that the conduct at issue was constitutionally protected, and (2) that it was a substantial or motivating factor in the termination. *Umbehr,* 518 U.S. at ——, 116 S.Ct. at 2347, 135 L.Ed.2d at 852; *Mt. Healthy City Sch. Dist. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Alcorn v. Vaksman,* 877 S.W.2d 390, 423 (Tex.App.—Houston [1st Dist.] 1994, writ denied). Once the employee discharges that burden, the government can escape liability by showing that it would have taken the same action even in the absence of the protected conduct. *Umbehr,* 518 U.S. at ——, 116 S.Ct. at 2347, 135 L.Ed.2d at 852; *citing Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576, 50 L.Ed.2d at 483–84. And even termination because of protected speech may be justified when legitimate countervailing government interests are sufficiently strong. *Umbehr,* 518 U.S. at ——, 116 S.Ct. at 2347, 135 L.Ed.2d at 852. A government employees' First Amendment rights depend on the "balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Umbehr,* 518 U.S. at ——, 116 S.Ct. at 2348, 135 L.Ed.2d at 852, *citing Pickering v. Board of Education of Township High School Dist. 205,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).

In deciding whether the speech at issue constitutes a matter of public concern, we follow the dictates of the Supreme Court in *Connick,* 461 U.S. at 138, 103 S.Ct. at 1684, 75 L.Ed.2d at 708; *Thompson v. City of Starkville, Mississippi,* 901 F.2d 456, 460 (5th Cir.1990). *Connick* instructs us to determine whether the speech at issue in a case can "be fairly characterized as constituting speech on a matter of public concern" before further analyzing allegations of unconstitutional restrictions on speech. *Thompson,* 901 F.2d 456, 461; *Connick,* 461 U.S. at 146, 103 S.Ct. at 1689, 75 L.Ed.2d at 708. For "speech on public issues" occupies the " 'highest rung of the hierarchy [sic] of First Amendment values' and 'is entitled to special protection.' " *Thompson,* 901 F.2d 456, 461; *Id.* at 145, 103 S.Ct. at 1689 (quoting *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 913, 102 S.Ct. 3409, 3425, 73 L.Ed.2d 1215 (1982) and *Carey v. Brown,* 447 U.S. 455, 467, 100 S.Ct. 2286, 2293, 65 L.Ed.2d 263 (1980)). But if the "employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Thompson,* 901 F.2d 456, 461; *Id.* at 146, 103 S.Ct. at 1690. The rationale behind the public concern requirement is to prevent public employees from relying on the Constitution for redress of personal *grievances. Thompson,* 901 F.2d at 462; *Id.* at 149, 103 S.Ct. at 1691 ("While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.").

In order to determine and to provide guidance in determining whether speech addresses an issue of public concern, *Connick* further instructs us to consider "the content, form, and context of a given statement, as revealed by the whole record." *Thompson,* 901 F.2d at 462; *Id.* at 147–48, 103 S.Ct. at 1690 (footnote omitted); *see also Johnston v. Harris County Flood Control Dist.,* 869 F.2d 1565, 1577 (5th Cir.1989)("We do not review the employee's words in a vacuum. Rather, we decide whether speech addresses a matter of public concern with reference to the 'content, form, and context of a given statement, as revealed by the whole record.' ")(*quoting Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690), *cert. denied,* 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990). Despite such directions, and because of the case-by-case analysis required, the definition of the term "public concern" is far from

clear-cut. *See Thompson,* 901 F.2d at 462; *Kirkland v. Northside Indep. Sch. Dist.,* 890 F.2d 794, 798 (5th Cir.1989)("The definition of 'matters of public concern' is imprecise." (footnote omitted)); *Kurtz v. Vickrey,* 855 F.2d 723, 726 (11th Cir.1988)("The meaning of the term 'public concern' is not without ambiguity. . . ."); *Note, Freedom of Speech in the Public Workplace: A Comment on the Public Concern Requirement,* 76 Cal.L.Rev. 1109, 1110 (1988)( "[T]he Court has done little to clarify what types of public employee speech are constitutionally protected or, more specifically, what constitutes a matter of public concern." (Footnote omitted)). However, it is clear that "[t]he courts will not interfere with personnel decisions 'when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest.' " *Thompson,* 901 F.2d at 462; *Page v. DeLaune,* 837 F.2d 233, 237 (5th Cir.1988) (*quoting Connick,* 461 U.S. at 147, 103 S.Ct. at 1690); *see also Johnston,* 869 F.2d at 1577 ("As a general rule, when an employee speaks about matters that are of personal interest only, the speech does not address matters of public concern.").

As guidance, we examine courts of other jurisdictions and their interpretation of what constitutes "matters of public concern." Federal courts have held that speech concerning illegal conduct, especially in the public sector is of "public concern." A complaint about special police treatment of private security guards was a matter of public concern. *Thomas v. Harris,* 784 F.2d 648 (5th Cir. 1986), *cert denied,* 507 U.S. 917, 113 S.Ct. 1275, 122 L.Ed.2d 669 (1993). Testimony in county commissioner's court in favor of co-employee's EEC claim was matter of public concern. *Johnston v. Harris County Flood Control Dist.,* 869 F.2d 1565 (5th Cir.1989). Complaints about illegalities in city budgeting process involved matter of public concern. *Patrick v. Miller,* 953 F.2d 1240 (10th

Cir.1992). Likewise, complaints about potential fraud and theft from public funds is matter of public concern. *Vasbinder v. Ambach,* 926 F.2d 1333 (2nd Cir.1991). The expenditure of public funds by the city, is a matter of public concern and citizens' comments. *Leach,* 819 S.W.2d at 198, *citing Schweitzer v. University of Texas Health Center at Tyler,* 688 F.Supp. 278, 283 (E.D.Tex.1988). Statements about wrongdoing or breach of the public trust was a matter of public concern in *Breuer v. Hart,* 909 F.2d 1035 (7th Cir.1990). Bringing to light actual or potential wrong-doing by public officials was found to be a matter of public concern. *Czurlanis v. Albanese,* 721 F.2d 98 (3rd Cir. 1983). And as in the instant case, a complaint by an employee that certain actions might violate federal regulations is a matter of public concern. *Gonzalez v. Benavides,* 774 F.2d 1295 (5th Cir.1985).

Given the various consistent interpretations of what constitutes "matters of public concern," we find that Appellee's reports concerning safety violations,[14] misuse of county equipment and personnel,[15] and missing county property [16] are in such matters. Accordingly, we find such reports to be afforded First Amendment protection.

### 3. Nexus between the Reports and Appellee's Termination

The second requirement for Appellee to prevail on his first amendment speech retaliation claim is to show that the conduct engaged in was a substantial or motivating factor in the termination. *See Umbehr,* 518 U.S. at ——, 116 S.Ct. at 2346, 135 L.Ed.2d at 852; *Doyle,* 429 U.S. at 278, 97 S.Ct. at 571, 50 L.Ed.2d at 478; *Levine v. Maverick County Water Control & Imp. Dist. No.,* 884 S.W.2d 790, 795 (Tex.App.—San Antonio 1994, writ denied); *Alcorn v. Vaksman,* 877 S.W.2d 390, 423 (Tex.App.—Houston [1st Dist.] 1994, writ denied). A claimant must

---

**14.** Appellee's reports of OSHA violations, particularly regarding the use of a breathing apparatus when spraying liquid fertilizer.

**15.** Appellee's reports of Upton County having county employees, during regular working hours, perform duties on a private country club.

**16.** Appellee's reports of approximately 500 gallons of gasoline missing from Upton County's county yard. Incidentally, when Appellee informed one of the commissioners of the missing gasoline, he was told to keep his mouth shut and mind his own business.

show that, but for the retaliatory motive, the incidents to which he refers would not have taken place. *Aguilar v. Chastain*, 923 S.W.2d 740, 744 (Tex.App.—Tyler 1996, no writ), *citing Doyle*, 429 U.S. at 286–87, 97 S.Ct. at 576, 50 L.Ed.2d at 483–84; *Jackson v. Cain*, 864 F.2d 1235, 1248–49 (5th Cir. 1989). Conclusory allegations without a specific factual basis are insufficient to state a claim of retaliation. *Chastain*, 923 S.W.2d at 744, *citing Whittington v. Lynaugh*, 842 F.2d 818, 819–20 (5th Cir.), *cert. denied sub nom, Johnson v. Lynaugh*, 488 U.S. 840, 109 S.Ct. 108, 102 L.Ed.2d 83 (1988); *see also Gibbs v. King*, 779 F.2d 1040, 1046 (5th Cir.), *cert. denied*, 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986)(concluding that a single incident is insufficient to prove harassment or retaliation). Once an employee shows that his conduct was a motivating factor, the employer then has the burden of showing a legitimate reason for which it would have terminated the employee absent the protected conduct. *Doyle*, 429 U.S. at 286–87, 97 S.Ct. at 576, 50 L.Ed.2d at 483–84. Upon such a showing by the employer, the employee can only prevail if he can show that the purported reasons for his termination were pretextual, and that he was actually fired for engaging in the protected activity. *Id.*

Several cases have found that a substantial and motivating factor for termination can be shown by the close proximity in time between the exercise of First Amendment rights and retaliatory action: *Holland v. Jefferson Nat'l Life Insurance Co.*, 883 F.2d 1307 (7th Cir.1989)(close temporal proximity can show causal connection); *Stever v. Independent Sch. Dist. No. 625*, 943 F.2d 845 (8th Cir.1991) (close proximity in time between last complaint of teacher and retaliatory transfer shows causal connection); *Pontarelli v. Stone*, 930 F.2d 104 (1st Cir.1991)(circumstantial evidence indicated superior was aware of complaint of sex discrimination made by employee; adverse action taken shortly thereafter showed causal connection); *Schwartzman v. Valenzuela*, 846 F.2d 1209 (9th Cir.1988)(close proximity in time between exercise of First Amendment rights and firing creates presumption that firing related to speech); *Taitt v. Chemical Bank*, 849 F.2d 775 (2nd Cir.1988) (close proximity

creates inferences of retaliation in Title VII); *DeCintio v. Westchester County Medical Center*, 821 F.2d 111 (2nd Cir.1987)(adverse action taken within one year creates presumption of retaliation), *cert. denied*, 484 U.S. 825, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987); *Walsdorf v. Board of Commissioners of East Jefferson Levee District*, 857 F.2d 1047 (5th Cir.1988) (adverse action taken within seven months of filing complaint shows inference of retaliation). In the present case, soon after Appellee complained about the lack of a respirator and other possible OSHA violations, adverse action was taken against him. The evidence was presented to the jury which found Upton County violated Appellee's First Amendment rights.

In addition, Upton County maintains that even if Appellee had established a First Amendment violation, there is no basis for imposing liability on the county absent an allegation and proof that the violation was caused by official county policy. The jury was presented with a jury charge which listed elements necessary for Appellee to sustain his First Amendment claim against Upton County. The initial element required to hold Upton County liable is that the actions taken were pursuant to official policy of the County or pursuant to the acts of an official of Upton County who has final policy making authority in the area involved. In the instant case, the term "official policy" was defined as:

(1) A rule or regulation promulgated, adopted or ratified by the governmental entity's legislative body;

(2) A policy statement or decision that is officially made by the county's legislative body; or

(3) A custom that is permanent, widespread, well settled practice constitutes a standard operating procedure of the county and of which the county's legislative body has actual or constructive knowledge.

The jury charge further added that a "county may also be liable for the deprivation of a constitutional right if the deprivation was pursuant to acts of an official of the county to

whom the legislative body has delegated final policy making authority in the area involved."

A county can be held liable for a constitutional tort if it caused the tort through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Merritt v. Harris County,* 775 S.W.2d 17, 24 (Tex. App.—Houston [14th Dist.] 1989, writ denied), *citing City of St. Louis v. Praprotnik,* 485 U.S. 112, 121–22, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988), *citing Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Furthermore, a county may be sued for constitutional deprivations caused by governmental custom enacted without formal approval through the county's decision making channels. *Merritt,* 775 S.W.2d at 24, *citing City of St. Louis,* 485 U.S. at 121–22, 108 S.Ct. at 923. This means that a county can be liable when its official policies causes a violation of a person's constitutional rights. *See Merritt,* 775 S.W.2d at 24; *City of St. Louis,* 485 U.S. at 121–22, 108 S.Ct. at 923.

The identification of policy making officials is a question of state law which may include valid local ordinances and regulations. It is not a question of federal law and it is not a question of fact. *Merritt,* 775 S.W.2d at 24; *City of St. Louis,* 485 U.S. at 121–22, 108 S.Ct. at 923. The authority to make municipal policy is the authority to make final policy without any constraints on the official's discretionary decisions. *Merritt,* 775 S.W.2d at 24; *City of St. Louis,* 485 U.S. at 121–22, 108 S.Ct. at 923. Whether an official has the power to make final policy is not dictated by the official's place in a hierarchical scheme. *Merritt,* 775 S.W.2d at 24; *Rhode v. Denson,* 776 F.2d 107, 109 (5th Cir.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986). Because like other governmental entities, counties often spread policy making authority among various officers and official bodies. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 479–80, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986).

The question of how many times must a violation occur to become a policy or custom has been well settled. In appropriate cir-

cumstances a single incident of conduct by an agent acting in furtherance of an official policy will result in Section 1983 liability, as well a single decision by a policymaker. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Leach,* 819 S.W.2d at 199; *City of Houston v. De Trapani,* 771 S.W.2d 703, 705 (Tex.App.—Houston [14th Dist.] 1989, writ denied); *see also Oklahoma City v. Tuttle,* 471 U.S. 808, 822, 105 S.Ct. 2427, 2435–36, 85 L.Ed.2d 791, *reh'g denied,* 473 U.S. 925, 106 S.Ct. 16, 87 L.Ed.2d 695 (1985)(holding that once a municipal policy is established, "it requires only one application ... to satisfy fully *Monell*'s requirement that a municipal corporation be held liable only for constitutional violations resulting from the municipality's official policy").

Upton County argues that Jug Strieglar fired Appellee and although Strieglar is afforded discretion in the area of hiring and firing, he is not the policymaker for personnel matters. While this may be true, we find it unconvincing. Strieglar himself testified that he was told to fire Appellee by Commissioner Kelton and that Commissioner Kluthe may have been present when Kelton told him to fire Appellee. Strieglar also testified that when Kelton told him to fire Appellee, he did not know why Kelton wanted Appellee to be fired. Upton County cannot now argue that Commissioners Kelton and Kluthe were not policy makers and that they were the ones that made the decision to terminate Appellee, albeit the use of Strieglar. Accordingly, we overrule Upton County's Point of Error No. Five.

Having overruled each of Appellant's points of error, we affirm the judgment of the trial court.